Margaret OSOSKY, Appellant

v.

Charles Z. WICK, Director of U.S. International Communication Agency.

No. 82–1043.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1982.

Decided April 8, 1983.

Mark T. Wilson, Washington, D.C., of the Bar of the Court of Appeals for the District of Columbia, pro hac vice by special leave of the Court, with whom Ronda L. Billig, Washington, D.C., was on brief, for appellant.

Diane M. Sullivan, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief for appellee. Kenneth M. Raisler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Edith Barnett, Washington, D.C., was on brief for Women's Legal Defense Fund, amicus curiae urging reversal.

Before LUMBARD,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit, and EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge LUMBARD.

LUMBARD, Circuit Judge:

Plaintiff Margaret Ososky, an employee of the Foreign Service, appeals from an order of Judge Gasch, November 9, 1981, dismissing her claim under the Equal Pay Act, 29 U.S.C. § 206(d) (1976), for failure to exhaust administrative remedies. Although the dismissal was technically without prejudice—Ososky would be permitted to refile after invoking the Foreign Service's own grievance procedures—the district court expressed "grave doubts" that the Equal Pay Act applies to the Foreign Service.

We reverse and remand for further proceedings. We hold that the Foreign Service must comply with the Equal Pay Act and that a claim under the Act may not be dismissed for failure to exhaust administrative remedies.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I. FACTS

Since this appeal arises from a dismissal on the pleadings, we assume the facts to be as stated in the complaint.

Ososky is a Foreign Service Reserve Officer, class 5, with the International Communication Agency (ICA), a branch of the Foreign Service. The defendant is the director of the Agency.

In 1978, after eighteen years in the Service, Ososky became the "Budget Analyst" for the Exhibits Service of the ICA's Programs Directorate, a position she held until late in 1980. She was given sole responsibility for the financial planning and evaluation of the exhibits aspect of the United States' cultural programming under several international agreements. As a budget analyst, Ososky was paid at a rate applicable to United States Civil Service positions of the GS–12 level. During the same years, male budget officers in the Press and Television Sections of the Programs Directorate were paid at the higher GS–14 rate for work substantially equivalent to Ososky's.

In 1979, Ososky made several attempts to have her position upgraded and her pay increased. When these efforts proved unsuccessful, she filed a complaint with the EEOC. She claimed that the ICA was discriminating against her on the basis of gender by paying her less for work substantially equal to that performed by higher-paid male members of the Service. She also complained that she was barred from consideration for the higher-paying GS–14 positions, because she was "being discriminatorily kept at the GS–12 level."

Ososky's complaint was still before the EEOC when she filed this action in November 1980, claiming that the ICA had violated her rights under the Equal Pay Act. The defendant moved to dismiss the complaint on the ground that Ososky had not exhausted administrative remedies available under the Foreign Service Act, 22 U.S.C. §§ 4131–4140 (Supp.1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–16(c), and on the additional ground that, in any event, the Equal Pay Act does not apply to the Foreign Service.

Expressing doubt that the Equal Pay Act could apply to the Foreign Service, the district court dismissed the complaint for failure to exhaust administrative remedies.

## II. EXHAUSTION

We find it unnecessary to determine the adequacy of the administrative remedies available within the Foreign Service Grievance System, 22 U.S.C. §§ 4131–4140. For we hold that the Equal Pay Act, unlike Title VII of the 1964 Civil Rights Act, provides for immediate judicial review of claims for equal pay and that the district court could not dismiss the complaint for failure to exhaust available remedies.

The Equal Pay Act of 1963 (EPA), 29 U.S.C. § 206(d) (1976), was enacted as an amendment to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (1976). By providing that "any amounts owing to any employee which have been withheld in violation of [the EPA] shall be deemed to be unpaid minimum wages or unpaid overtime compensation under [the FLSA]," 29 U.S.C. § 206(d)(3), Congress required that the EPA be enforced through the then long familiar FLSA procedures for recovering minimum wages and overtime pay. H.Rep. No. 309, *reprinted in* U.S.Code Cong. & Ad.News 687, 688, 88th Cong., 1st Sess. (1963). These procedures do not include an exhaustion requirement. We believe that a comparison of the different remedial provisions and similar histories of the FLSA and of Title VII, shows that the failure expressly to require exhaustion of claims under the former reflects a deliberate Congressional decision. In 1972 when it extended the scope of Title VII to cover federal employees, Congress added language to the statute expressly requiring federal employees to exhaust administrative remedies before filing an action in federal district court. *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). *See* Equal Employment Opportunity Act, Pub.L. 92–261, § 11 (March 24, 1972), *codified at* 42 U.S.C. § 2000e–16(c). Against this background, the 1974 amendments extending the FSLA's minimum wage guar-

antees and discriminatory pay protections to federal employees stand in marked contrast. For, although § 6(b) of the 1974 FLSA amendments, *codified at* 29 U.S.C. § 204(f), authorized the Civil Service Commission (now the Office of Personnel Management) to administer the FLSA, Congress specifically provided that "nothing in this subsection shall be construed to affect the right of an employee to bring an action for unpaid minimum wages, or unpaid overtime compensation, and liquidated damages under § 216(b) of this title." *Id.* And § 216(b), as amended in 1974, provides simply that an action to recover liability under the EPA may be maintained "against any employer (including a public agency) in any Federal or State Court of competent jurisdiction." 29 U.S.C. § 216(b) (1976). Section 216(b) makes no reference to the availability of administrative remedies.

These provisions make it clear that "the Equal Pay Act, unlike Title VII, has no requirement for filing administrative complaints and awaiting administrative conciliation efforts." *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). *See also Nitterright v. Claytor,* 454 F.Supp. 130, 24 Fair Emp.Prac. Cases 678, 684 (D.D.C.1978); *Cox v. University of the District of Columbia,* 24 Fair Emp.Prac. Cases 690 (D.D.C.1981). Had Congress intended to require exhaustion when it enacted the 1974 FLSA amendments, it would have done so expressly as it did when it made similar amendments to Title VII. Nothing in the legislative history suggests that the omission was an oversight.

Moreover, permitting the district court to require exhaustion in its discretion would be inconsistent with the statute's remedial scheme. The FLSA provides compensatory relief for victims of wage discrimination. That relief is not unlimited; back pay may be awarded only for the period beginning two years before filing suit. 29 U.S.C. § 255(a). Thus, the right to back pay is continually eroded as the EPA claimant pursues administrative remedies. Had Congress intended to permit courts to require EPA plaintiffs, like the Title VII plaintiffs,

to run an administrative gauntlet as a precondition to filing suit, Congress would have provided, as it did when it amended Title VII, that back pay could be received for the period beginning two years before either filing an action in federal court *or* commencing administrative proceedings.

Finally, we do not believe that, in the ordinary EPA case, the court should stay the proceedings pending administrative hearings. Defendant apparently suggests that EPA plaintiffs should file a complaint in federal court to preserve their back pay awards, then proceed to have the action stayed pending exhaustion of administrative remedies. Then, after those remedies have been exhausted, the plaintiff could return to federal court and pursue her judicial remedies. We see no warrant for such a scheme. The courts have been charged with making the initial factual determinations relevant to the Equal Pay Act. This case does require the resolution of the sort of complex and technical factual issues which might be better resolved by an administrative agency with special competence in the area. *Cf. Ogden v. Zuckert,* 298 F.2d 312 (D.C.Cir.1961) (Air Force major sought declaratory judgment establishing right to be retired rather than discharged because of physical disability); *Sohm v. Fowler,* 365 F.2d 915 (D.C.Cir.1966) (Lieutenant Commander, United States Coast Guard, sought to avoid retirement for having been passed over; the court sought to avoid difficult constitutional issues by staying the case pending the completion of ongoing proceedings before the Board for Correction of Military Records to resolve complex and technical factual issues.) *Douglas v. Hampton,* 512 F.2d 976, 1014–15 (D.C.Cir.1975) (question of validity of entrance examination remanded to Civil Service Commission.) Here, we perceive no reason why judicial factfinding might be improved if the plaintiff first had recourse to administrative grievance procedures. Indeed, defendant's sole argument on the merits seems to be that the Equal Pay Act is incompatible with and therefore inapplicable to the way things have long been done

in the Foreign Service. We do not think that the Foreign Service's general grievance committee has any special competence to decide such a question. Similarly, we do not believe that a general grievance committee has any special competence to determine equality of work. And, in any event, the committee's analysis would not add appreciably to the Service's already completed audits of plaintiff's position.

### III. APPLICABILITY OF THE EQUAL PAY ACT TO THE FOREIGN SERVICE

The district court apparently accepted the defendant's argument that the EPA is incompatible with and therefore inapplicable to the Foreign Service's merit system. We note our view that the defendant's argument is refuted by the language of the EPA and the FLSA and is unsupported by precedent or policy.

The thrust of the defendant's position is that the "equal pay for equal work" principle is fundamentally at odds with the Service's "rank in person" personnel system. This court recently described this congressionally established system in *Talev v. Reinhardt,* 662 F.2d 888, 895 (D.C.Cir.1981):

This so-called 'rank in person' system—which statutorily governs the appointment and assignment of all Foreign Service employees ...—permits the agency to assign and transfer employees from post to post as its organizational interests may require. The rank in person system differs from the rank in position system of the civil service, under which the employee and his position are assigned the same grade. Under the rank in person system, grades are assigned to positions and employees separately, with the grade of the position assessed at its maximum performance level, and the grade of the employee established on the basis of his or her personal qualifications. The result is that Foreign Service employees frequently occupy positions having higher grades than their personal grades. Similarly, it often happens that two employees having substantially different qualifications or experience may be assigned to positions bearing the same rank. That they receive commensurate salaries is amply explained by the differences in qualifications and responsibilities of employees in the two different divisions.

The government argues that since the Foreign Service pays on the basis of personal grade rather than position or work, and since its shifting international staffing needs often require persons of different grades to hold similar jobs, therefore it cannot be held to a standard requiring equal pay for equal work. To apply the EPA, the argument goes, would undermine the Service's ability to maintain the salary of highly qualified, long-time employees when momentary needs require their presence in a geographic area where there are no suitably high ranking positions.

First, the distinction between rank in person and rank in position system is overdrawn. We do not doubt that the Service needs the flexibility to transfer its highly qualified personnel around the globe without adjusting salary to fit the exact nature of the positions employees temporarily hold. Nonetheless, the Service continues to view positions as having a particular grade—as being suitable, other things being equal, to persons having the same grade. In other words, the Service makes some attempt to tie pay to work. Thus, a successful EPA challenge might be based on the claim that the Foreign Service assigned different grades to identical jobs and staffed the lower ranked positions with women and that the resulting gender-based discrimination in pay was not explained by temporary staffing needs and the greater seniority or qualifications of the male employees.

Second, even though the Service does not use work as the sole criteria for setting salaries, the rank in person systems is still not incompatible with the Equal Pay Act. As we noted in *Talev, supra,* the Service bases salary on an employee's qualifications, responsibility and length of time in the Service. Although the Equal Pay Act requires that equal pay be given for work equal in "skill, effort, and responsibility," 29 U.S.C. § 206(d), the Act also provides

express exceptions for length of time with the employer ("seniority") and qualifications ("merit"). 29 U.S.C. § 206(d).[1] Since the Equal Pay Act thus incorporates the compensation criteria underlying the Service's rank in person system, the proper place for the government's arguments justifying the pay disparity is in the interpretation of § 206(d) defenses.

The defendant argues that Congress could not have intended that each time the Foreign Service transfers a female employee, it make sure that she is being paid commensurably with equally qualified and equally senior male employees doing equivalent work. We disagree. That is exactly what Congress intended. All employers are to make sure that the wages they pay to female employees are not lower because they are wages paid to female employees. Nor do we believe that this task is especially burdensome. Any employer does all that the Act requires in the course of complying with reasonable procedures for establishing wages based on work, skill, effort, responsibility, qualification, seniority and the like, without regard to gender.

On its face, the EPA applies to the Foreign Service, and because we find nothing in the EPA inconsistent with the personnel system established by the Foreign Service Act, we reject the defendant's suggestion that the Foreign Service be made an exception. The EPA applies to all federal employees "in any executive agency (as defined in § 105 [of Title 5])" 29 U.S.C. § 203(e)(2)(A)(ii) (1976). Section 105 of Title 5 defines an "Executive agency" as including an executive department. The Department of State, which includes the Foreign Service, is an "Executive department." 5 U.S.C. § 101 (1976). Since, the members of the Service fall within the EPA's affirmative definition of covered employees, the Service can be excluded from coverage only if it falls within an exceptions clause. However, in a very specific list of excepted groups, the Service is not mentioned. 29 U.S.C. § 203(e)(2)(C), (3).[2]

The Foreign Service Act of 1980 itself provides the clearest indication that Congress believed that the EPA applied to the Foreign Service. Section 3905(e) of Title 22 provides that nothing in the set of principles and rules governing the Service's merit ranking, employee protections, and minority recruitment

> ... shall be construed to extinguish or lessen ... any right or remedy available to any employee or applicant for employment in the civil service under ... [the Equal Pay Act], prohibiting discrimination on the basis of sex."[3]

1. The Equal Pay Act provides in pertinent part:
   No employer hiring employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishments at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....
   29 U.S.C. § 206(d)(1).

2. Section 203(e) defines "employee" and lists the following exceptions: any individual employed by the state

[(2)(C)](i) who is not subject to the civil service laws of the state, political subdivision, or agency which employs him; and (ii) who—
   (I) holds a public elective office of that state, political subdivision, or agency,
   (II) is selected by the holder of such an office to be a member of his personal staff,
   (III) is appointed by such an officeholder to serve on a policy making level, or
   (IV) who is an immediate advisor to such an officeholder with respect to the constitutional or legal powers of his office.
   (3) For purposes of subsection (u) of this section, ["employee"] does not include any individual employed by an employer engaged in agriculture if such individual is the parent, spouse, child, or other member of the employer's immediately family.

3. Defendant argues that the "civil service" referred to in § 3905(a) does not include the Foreign Service, and that § 3905(e) therefore provides only that nothing in the Foreign Ser-

This section gives to members of the Service the same rights available to federal employees generally and reflects Congress' judgment that there was no need to create a distinct body of discrimination law for the Foreign Service. Rather, the Act was to direct the "vigorous implementation" of legislation Congress regarded as "currently applicable to the Foreign Service, such as ... section 6(d) of the Fair Labor Standard Act [the Equal Pay Act]...." Sen.Rep. No. 96–913, 96th Cong., 2d Sess., 14 (1980), U.S.Code & Ad.News, 4432.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

vice Act diminishes the rights of persons in the Civil Service who are not members of the Foreign Service.

We believe this reading renders § 3905(e) superfluous. Congress would not add a provision to the Foreign Service Act to the effect that the merit system governing members of the Service does not diminish the rights of persons who are not members of the Service. In the absence of such language, no court would assume that procedures appropriate to the Foreign Service's unique system would be applicable to members of, say, the Postal Service.

Moreover, the legislative history shows that the section was designed to carry its less strained reading. Rather than even hinting at the interpretation suggested by the defendant, the Senate report on the Foreign Service Act of 1980 states simply that this section establishes that the Foreign Service Merit System "does not ... affect any right or remedy available to any employee or applicant under existing Federal Law prohibiting discrimination." Senate Report 96–913, 96th Cong., 2d Sess. (1980) U.S. Code Cong. & Ad.News, 4419, 4447.