

# The Attorney General of Texas

April 15, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lawrence F. Alwin, CPA
State Auditor
P. O. Box 12067
Austin, Texas     78711

Opinion No. JM-475

Re: Compensatory time and/or over-
time pay for state employees after
April 15, 1986

Dear Mr. Alwin:

You ask:

> What does the law require in regard to a state
> employee's receipt of compensatory time off or
> premium overtime pay for overtime earned on or
> after April 15, 1986?

Your letter focuses on the United States Supreme Court's decision in
Garcia v. San Antonio Metropolitan Transit Authority, 105 S.Ct. 1005,
___ U.S. ___ (1985), on the Fair Labor Standards Amendments of 1985,
Pub.L. 99-150, ___ Stat. ___ (1985), and on section 2f of article V of
the current General Appropriations Act, Acts 1985, 69th Leg., ch. 980,
at 7759.  A brief history of the applicability of the Fair Labor
Standards Act to the states is necessary to an understanding of the
Garcia case, these recent amendments, and how they affect section 2f.
The amendments become effective on April 15, 1986.

The Fair Labor Standards Act of 1938, 29 U.S.C., §201 et seq.
[hereinafter FLSA], requires employers that are covered by the act to
pay their employees a minimum hourly wage, see §206, and to pay them
at one and one-half times their regular rate of pay for hours worked
in excess of forty during a workweek.  See §207.  As originally
enacted, the FLSA of 1938 specifically excluded the states and their
political subdivisions from its provisions.  See 29 U.S.C. §203(d)
(1940 ed.); (50 Stat. 1060).  Beginning in 1961, Congress enacted a
series of amendments which extended the coverage of the act to certain
types of public employees.  See Fair Labor Standards Amendments of
1961, §§2(c), 9, 75 Stat. 65, 71; Fair Labor Standards Amendments of
1966, §§102(a), (b), 80 Stat. 831; §206(e), 80 Stat. 836.  In 1974,
Congress again broadened the coverage of the act by defining
"employer" to include a "public agency."  Fair Labor Standards Amend-
ments of 1974, §21(b), 88 Stat. 68.  Consequently, by early 1985, the
act's minimum wage and overtime provisions extended to almost all
employees of the states and their political subdivisions.  See Garcia

v. San Antonio Metropolitan Transit Authority, supra. After 1974, but prior to amendment in 1985, the act contained only the general exemption for executive, administrative or professional personnel, see §213(a)(1), and an exemption for elected officeholders and certain of their employees. See §203(e)(2)(C).

The Fair Labor Standards Amendments of 1985, Pub.L. 99-150, were enacted in response to the United States Supreme Court's decision in Garcia. The Garcia case is the most recent of a series of significant cases which addressed the constitutionality of applying the FLSA to the states. The combined effect of the amendments which were enacted in the 1960's was initially upheld in Maryland v. Wirtz, 392 U.S. 183 (1968). Congress relied on the Wirtz case when it expanded the coverage of the act in 1974 to include most public employees. H.R. Rep. No. 93-913, 93d Cong., 2d Sess. 6 (1974). The 1974 amendments, however, triggered a challenge which resulted in a severe limitation on the extent to which the act could be applied to the states. See National League of Cities v. Usery, 426 U.S. 833 (1976). In National League of Cities v. Usery, the Supreme Court held that the Commerce Clause of the United States Constitution does not empower Congress to apply the minimum wage and overtime provisions of the FLSA to the states

> insofar as . . . [they] operate to directly dis-
> place the States' freedom to structure integral
> operations in areas of traditional governmental
> functions. . . .

426 U.S. at 852. Responding to the National League of Cities case, the United States Department of Labor promulgated regulations providing that it would not enforce the minimum wage and overtime provisions of the act against a state or political subdivision unless notice had first been given that the activities in question were not integral operations in areas of traditional governmental functions. 29 C.F.R. §775.2(b) (1984).

In Garcia, the Supreme Court reversed its decision in National League of Cities. Like the National League of Cities case, the Garcia decision was the result of a sharply divided court. In a 5-4 decision, the Court rejected,

> as unsound in principle and unworkable in prac-
> tice, a rule of state immunity from federal
> regulation that turns on a judicial appraisal of
> whether a particular governmental function is
> 'integral' or 'traditional.'

105 S.Ct. at 1016. The Court held that the FLSA, as applied to the San Antonio Metropolitan Transit Authority, does not violate state sovereignty. The Court reasoned broadly that once a power is found to

be delegated to the federal government by the Constitution, exercise of that specific power by the states cannot be protected by using the Tenth Amendment or judicially created limitations as affirmative state shields to federal action.

The primary impact of the Garcia decision was the removal of the constitutional shield which had protected states and localities from potentially burdensome federal legislation enacted under Congress' Commerce Clause powers. Consequently, under Garcia the potential impact of existing or proposed federal legislation and regulations on the states and localities become no longer a constitutional issue. It became a policy matter to be resolved in the course of the legislative process. 105 S.Ct. at 1020-21.

When the Garcia decision was handed down, the FLSA minimum wage and overtime provisions extended to virtually all employees of the states and their political subdivisions. Although Garcia dealt with a transit authority, the broad language employed and the express over-ruling of the National League of Cities case indicated that these provisions of the act were to be applied to the state and municipal employees which Congress intended to include when it passed the 1974 amendments. Under that reading, once an individual falls within the category of covered employees, the employees can be excluded from application of the act only if they are covered by an exception clause. See Ososky v. Wick, 704 F.2d 1264, 1268 (D.C. Cir. 1983). The Fair Labor Standards Amendments of 1985 created new exceptions for public employees. You are concerned about the effect of these amendments on the current Appropriations Act.

Section 2f of article V of the current Appropriations Act contains two riders enacted in response to these changes in the law and in anticipation of amendments by Congress to the FLSA. Acts 1985, 69th Leg., ch. 980, at 7759-7760. Section 2f provides, in pertinent part:

> f. OVERTIME. (1) Employees Subject to FLSA. An employee who is subject to overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. Secs. 201 et seq., (FLSA) is entitled to compensation for overtime as provided by this subdivision.
>
> An employee who is required to work hours in excess of 40 hours in a workweek is entitled to compensation for the excess hours either by:
>
> (A) the agency allowing (or requiring) the employee to take compensatory time off during the same pay period, at the rate of 1-1/2 hours off for each hour of overtime; or

(B) at the discretion of the employing agency, in cases in which granting compensatory time off is impractical, the employee receiving pay for the overtime at the rate equal to 1-1/2 times the employee's regular rate of pay.

. . . .

(4) Contingency Provision. If state employees are excluded generally from the application of the FLSA as a result of a court decision or statutory change, this subdivision governs overtime pay and compensatory leave.

A regular, full-time employee who is required to work hours in excess of the standard workweek established for the position in accordance with the applicable statutes is entitled to compensation for the excess hours either by:

(A) the agency allowing (or requiring) the employee to take equivalent compensatory time off during the 12-month period following the end of the workweek; or

(B) at the discretion of the employing agency, in cases in which granting compensatory time off is impractical, the employee receiving pay for the overtime at the rate of 1-1/2 times the employee's regular rate of pay. (Emphasis added).

The primary difference between these two subsections involves the time period during which compensatory time off must be taken.

Section 2f(1) applies to employees subject to the FLSA while section 2f(4) applies "[i]f state employees are excluded generally from the application of the FLSA as a result of a court decision or statutory change. . . ." As indicated in the discussion above, the Garcia decision was the result of a sharply divided court. The Texas Legislature prepared for the possibility that the decision could be reconsidered. Because of the significance of the controversy surrounding the decision, the Texas Legislature also prepared for the possibility that Congress would address the question through the legislative process -- the solution suggested in the Garcia case. It is clear that section 2f(4) was intended to respond to legislative changes in the FLSA. The problem is that Congress reacted to the Garcia case in a way that the language of section 2f(4) does not anticipate. Section 2f(4) applies only "[i]f state employees are excluded generally from the application of the FLSA. . . ."

The 1985 amendments to the FLSA do not totally exclude the employees of a public agency; rather, they specify that a public agency may provide compensatory time off in lieu of overtime compensation payments in certain circumstances. Pub.L. 99-150, §2 (to be codified as 29 U.S.C. §207(o)). The time off is not limited to the same pay period. The amendments also provide limited exemptions for three special situations: (1) special detail work for fire protection and law enforcement, (2) occasional or sporadic employment, and (3) substitution. Pub.L. 99-150, §3 (to be codified as 29 U.S.C. §207(p)). Pub.L. 99-150, §4 (to be codified as 29 U.S.C. §203(e)). Your concern, however, focuses on the general applicability of the time off provisions rather than with the special exceptions. The 1985 amendments create a conditional exception for public employees from the overtime provisions of the FLSA. The issue to be resolved is whether this is a "general exclusion" within the meaning and intent of subsection 2f(4).

Although there are certain aspects of section 2f(4) which weigh against finding that it was intended to apply to the new amendments, these considerations are not compelling. Section 2f(4)(A) authorizes a state agency to allow or require an "employee to take equivalent compensatory time off during the 12-month period following the end of the workweek." (Emphasis added). The 1985 amendments do not authorize "equivalent" compensatory time off. They require time off "at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." Pub.L. 99-150, §2(a)(1) (to be codified as 29 U.S.C. §207(o)(1)). Section 2f(4)(E) grants the employing agency the discretion, in cases in which granting compensatory time off is impractical, to pay the employee for overtime at the rate of one and one-half times the employee's regular rate of pay. It does not seem likely that the legislature intended to grant state agencies the discretion to choose between giving equal time off and time and one-half pay. Thus, the term "equivalent" in section 2f(4)(A) need not be read as a limit on time off to one hour of leave for one hour of overtime.

The legislature intended subsection 2f(4) to apply if Congress enacted legislation excluding state employees; they did not have the benefit of knowing exactly what that legislation would provide. Accordingly, state agencies may allow or require employees to take time off during the 12-month period following the end of the workweek, but the time off must be at a rate of not less than one and one-half hours for each hour of overtime.

In contrast, section 2f(1) authorizes an agency to allow or require its employees "to take compensatory time off during the same pay period, at the rate of 1-1/2 hours off for each hour of overtime." (Emphasis added). This requirement was included only in an effort to comply with the FLSA as it existed when Garcia was decided last spring. Court interpretations of the FLSA indicate that the act allowed compensatory time off in lieu of payment only if time off was

granted during the same pay period. See Dunlop v. New Jersey, 522 F.2d 504, 511 (3d Cir. 1975), vacated and remanded for consideration of National League of Cities sub nom New Jersey v. Usery, 427 U.S. 909 (1976). The 1985 amendments do not contain this requirement. Thus, the requirement that overtime time off be taken during the same pay period is inconsistent both with the 1985 amendments and with the legislative intent behind section 2f(4).

By enacting section 2f(1), the Texas Legislature has clearly evidenced the intent to comply with the FLSA. For example, the last paragraph of section 2f(1) indicates simply that exceptions to the workweek overtime calculations for certain categories of employees "shall be made in accordance with the FLSA." By enacting the alternate section, section 2f(4), however, the legislature just as clearly expressed the intent that state agencies be able to take advantage of exclusions granted by Congress. Thus, neither section is strictly enforceable. Nevertheless, sections 2f(1)(A) and 2f(4)(A), when taken together, express a state policy that state agencies have sufficient authority to comply with and to take advantage of the exclusions to the FLSA enacted in 1985. State agencies may therefore allow or require an employee to take time off, at the rate of one and one-half hours for each hour of overtime, during the 12-month period following the end of the workweek.

## S U M M A R Y

The legislative intent behind sections 2f(1)(A) and 2f(4)(A) of article V of the current General Appropriations Act, Acts 1985, 69th Leg., ch. 980, when taken together, express a state policy that state agencies have sufficient authority to comply with and to take advantage of the exclusions to the Fair Labor Standards Act enacted in 1985. Accordingly, state agencies may allow or require an employee to take time off, at the rate of one and one-half hours for each hour of overtime, during the 12-month period following the end of the workweek.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

p. 2178

JACY HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General