**Frederico T. BROOM, Plaintiff,**

v.

**Louis CALDERA, Secretary of the Army, Defendant.**

**No. CIV. 00–00088(ESH).**

United States District Court, District of Columbia.

Jan. 19, 2001.

Joseph F. Henderson, American Federal of Governmental Employees, Washington, DC, for Plaintiff.

David Jackson Ball, Jr., U.S. Attorney's Office, Civil Division, Washington, DC, for Defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's motion to dismiss, or in the alternative, for summary judgment, plaintiff's opposition, and defendant's reply. Defendant argues that plaintiff has failed to exhaust his administrative remedies. For the reasons set forth below, the Court will deny defendant's motion.

### BACKGROUND

Plaintiff Frederico Broom is an African American male who was employed as a boiler plant operator by the Department of the Army at Walter Reed Army Medical Center (Walter Reed) in the District of Columbia and at its annex in Forest Glen, Maryland. He was born on July 16, 1956 and was diagnosed with bipolar disorder in 1995 and with sleep apnea in 1997.

On January 10, 1997, an oil spill occurred at the Forest Glen annex. Plaintiff maintains that he was not present when the spill occurred. Defendant investigated the spill and determined that plaintiff was responsible for the spill and did not report it. Defendant also determined that plaintiff had been absent without leave on various occasions.

On May 16, 1997, plaintiff received a Proposed Notice of Removal from his position, as a result of his responsibility for the oil spill and for his being placed on AWOL for six days between January 2, 1997 and March 14, 1997. On May 19, 1997, plaintiff filed an informal complaint alleging discrimination with respect to the proposed removal.

On October 30, 1997, defendant determined that plaintiff should be removed from his position. He was offered a "last chance agreement," under which the removal action would be canceled after one year if plaintiff complied with the terms of the agreement. Plaintiff declined to sign the last chance agreement. On that day, plaintiff filed an informal complaint alleging discrimination with respect to the last chance agreement. He received a Decision of Proposed Removal on December 17, 1997, effective January 9, 1998, alleging absence without leave, dereliction of duty in failing to report the oil spill, and failure to follow regulations and procedures with respect to those matters. On January 7, 1998, plaintiff filed an informal complaint regarding the December Decision of Proposed Removal. On that day, he received a document entitled, "Avenues of Redress (Rights and Responsibilities Notice)" from the Army's EEO office. The five-page single-spaced document contains a section entitled, "3. Responsibilities." In that section, it states:

f. You must inform the EEO office of your election of redress. Whichever formal action you file first (a MSPB mixed case appeal, a discrimination complaint under the EEO complaint procedure, or a written grievance under the negotiated

grievance procedure) is considered to an election to proceed only in that forum as to the alleged discrimination. Thus you should be aware that:

(1) An appeal to the MSPB will not be accepted if you have filed a timely formal complaint in writing under the EEO complaint procedure or a timely written grievance under the negotiated grievance procedure.

(2) A discrimination complaint filed under the EEO complaint procedure will be dismissed if you have filed a timely appeal to the MSPB or a timely-written grievance under the negotiated procedure on the same matter.

g. If your complaint is not resolved at the conclusion of counseling, you may file a formal EEO complaint within 15 calendar days of receipt of the counselor's notice of right to file a discrimination complaint.

(Def.Mot.Exh. 1). The EEO counselor who gave him the document did not explain the document to him or talk about his rights and responsibilities, contrary to the provisions of the EEOC's October 1992 Management Directive 110 ("MD–110"), which required that EEO counselors explain the requirements for initiating a formal complaint.

MD–110 imposed other procedural requirements upon defendant, as well:

Immediately upon receipt of a formal complaint of discrimination, the agency shall acknowledge receipt of the complaint in writing .... The agencies must also inform the complainant of the issue(s) to be investigated and, if appropriate, that the complaint, or a portion of the complaint, is dismissed. This may be done simultaneously with the acknowledgment.

MD–110.

On January 30, 1998 plaintiff filed an appeal with the Merit System Protection Board (MSPB), contesting his dismissal and alleging that defendant violated Title VII, the Americans with Disabilities Act, and the Civil Service Reform Act. The appeal was signed by Julie Myers, his counsel at the time. It is uncontested that plaintiff had no previous experience with a "mixed-case," or a case involving both discrimination and non-discrimination claims, and had not previously filed an appeal with the MSPB.

On February 23, 1998, plaintiff received from defendant's EEO Office a memorandum entitled, "Notice of Right to File a Discrimination Complaint." Apparently this was not served on plaintiff's counsel of record. The memorandum indicated that plaintiff had a right to file a complaint within 15 calendar days of receipt of the notice with respect to his allegations of discrimination based on race, disability, and reprisal. The memo informed plaintiff that:

[t]he complaint should also state whether you have filed a grievance under a Negotiated Grievance Procedure or an appeal to the Merit Systems Protection Board on the same subject matter, including dates. This information is necessary to determine whether your complaint is appropriate for processing under Section 1613 of Title 29 of the Code of Federal Regulations.

(Pl.Opp.Exh. 20). On February 26, 1998, plaintiff filed a formal complaint of discrimination with the defendant's EEO Office. This complaint was signed by plaintiff. In his complaint he indicated that he had filed an appeal with the MSPB by checking the appropriate box in response to Question 19 on the complaint form.

On March 17, 1998, plaintiff's counsel formally withdrew from the case. On March 23, 1997, new counsel, Marc Greidinger, agreed to represent plaintiff for the purposes of requesting from the MSPB either a dismissal without prejudice or a continuance of more than two weeks to prepare the case; Greidinger indicated that he would only agree to take plaintiff's case if one of the requests was granted. The MSPB Administrative Judge ("MSPB AJ") denied the requests.

On April 13, 1998, the MSPB AJ held a prehearing telephone conference, at which time plaintiff proceeded *pro se* and defendant was represented by agency counsel Susan Harvey. During that telephone conference, plaintiff informed the MSPB AJ that he was withdrawing his MSPB appeal because he would rather pursue his appeal in the EEO forum. Upon his withdrawal, the MSPB AJ stated, "Then you can go ahead and pursue your matters through the EEO forum as you planned." (Def.Mot.Exh. 10).

The MSPB AJ issued a decision on April 17, 1998, holding that it was "appropriate that the appeal be DISMISSED, with prejudice, as withdrawn." Defendant's EEO Office did not dismiss plaintiff's EEO complaint until May 12, 1998, citing plaintiff's prior filing before the MSPB as the reason for dismissal. (Def.Mot.Exh. 13). Plaintiff appealed to the EEOC. The EEOC denied plaintiff's appeal on October 18, 1999, holding that plaintiff's "withdrawal of his MSPB appeal on April 13, 1998, did not negate his prior [forum] election." (Def. Mot. Exh. 14 at 2). The decision on appeal indicated that plaintiff had a right to file a civil action within ninety days of receipt of the decision. (*Id.* at 3–4).

Plaintiff filed a complaint in this Court on January 14, 2000. Plaintiff alleges violations of Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act, claiming discrimination on the basis of race, age, and disability. Defendant now moves for dismissal of this action, or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), 12(h)(2), 12(h)(3), and 56 for failure to exhaust administrative remedies.

## LEGAL ANALYSIS

### I. Is Exhaustion of Administrative Remedies Required?

Defendant argues that plaintiff failed to exhaust his administrative remedies before the MSPB by withdrawing his appeal there. (Def. Mot. at 5). Defendant also argues that plaintiff failed to exhaust his administrative remedies before the agency by first electing to file an appeal before the MSPB, and then filing an EEO complaint with the agency, thus leading to the agency's dismissal of the EEO complaint. (Def. Mot. at 7).

■ With respect to complaints alleging violations of Title VII, it is well-settled that a plaintiff is required to exhaust his administrative remedies prior to filing a judicial complaint. *See Ososky v. Wick*, 704 F.2d 1264, 1265 (D.C.Cir.1983)(citing *Brown v. GSA*, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Likewise, the exhaustion requirement extends to those individuals filing a claim under the Rehabilitation Act for Title VII violations in the workplace. *See Thorne v. Cavazos*, 744 F.Supp. 348, 350 (D.D.C.1990), *aff'd*, No. 92–5137, 1993 WL 32323 (D.C.Cir. Jan. 29, 1993).

In contrast, "exhaustion of administrative remedies is not a prerequisite to filing a judicial complaint alleging an ADEA violation." *Id.* Rather, "the only exhaustion requirement mandated by section 15 of the ADEA [is] that of either providing the EEOC with notice of an intent to sue within 180 days of the unlawful practice, or actually filing a discrimination complaint with the EEOC." *Kennedy v. Whitehurst*, 690 F.2d 951, 961 (D.C.Cir.1982); *see* 29 U.S.C. § 633a. Therefore, plaintiff could have chosen to proceed directly to this Court rather than filing for review of his ADEA claim through agency procedures.

However, it is unclear whether there is an exhaustion requirement for ADEA claims when, as in this case, administrative relief is sought before a court action is instituted. *Compare, e.g., Purtill v. Harris*, 658 F.2d 134 (3rd Cir.1981); *cert. den.*, *Purtill v. Heckler*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983)(requiring exhaustion once administrative remedies are sought) *and Castro v. U.S.*, 775 F.2d 399, 404 (1st Cir.1985)(finding that allowing an

individual to initiate a civil action before exhausting administrative remedies, once they are initiated, would be inconsistent with one of the central objectives of the exhaustion requirement—to encourage mediation or conciliation), *with Langford v. Army Corp. of Engineers,* 839 F.2d 1192, 1193–94 (6th Cir.1988)(stating that "the ADEA may be construed to permit the filing of a civil action at any time when an employee or applicant has filed an age discrimination complaint with the EEOC"). The D.C. Circuit has not squarely addressed this issue.

The Court need not reach the issue of whether exhaustion is required under the ADEA, however, for even if plaintiff has failed to exhaust his administrative remedies, there are equitable reasons for excusing him from doing so.

## II. Plaintiff is Excused from Exhausting His Administrative Remedies

Even if plaintiff has not properly exhausted his administrative remedies by failing to follow the highly technical requirements relating to mixed case filings, the failure to do so does not bar plaintiff from filing a complaint in this Court. The D.C. Circuit has held that "exhaustion [is] not jurisdictional in nature but rather [is a] statutory condition[ ] precedent to the instigation of litigation and [is] therefore subject to waiver, estoppel, and equitable tolling." *Kennedy v. Whitehurst,* 690 F.2d 951, 961 (D.C.Cir.1982). The D.C. Circuit reasoned that this principle holds true with respect to both Title VII and the ADEA. *See id.*

■ Plaintiff may be excused from exhaustion requirements where the Court finds that there are equitable reasons for doing so. *See Paterson v. Weinberger,* 644 F.2d 521, 524 (5th Cir.1981)(in ADEA case, holding that "[p]laintiff was required to seek relief through one of the two avenues described or alternatively claim equitable grounds for not having so proceeded and must prove that the reasons he was prevented from proceeding can be blamed upon the employing agency"); *see also Siegel v. Kreps,* 654 F.2d 773, 777 (D.C.Cir.1981)(noting that "equitable considerations" may prevent dismissal of the action for failure to exhaust administrative remedies in a Title VII case).

■ In determining whether there are equitable reasons for excusing a failure to exhaust, courts consider a plaintiff's intelligence and familiarity with the process. *See Ettinger v. Johnson,* 556 F.2d 692, 698 (3rd Cir.1977); *see also Bayer v. U.S. Dept. of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992)(citing cases in which intelligence, education, and awareness of the regulations were relevant to whether plaintiff could be excused from meeting procedural requirements for filing administrative complaints). Another factor is whether the defendant agency has actual notice of plaintiff's claims. As held by the D.C. Circuit and this Court, a plaintiff will not be deprived of judicial review based on a failure to follow the procedural technicalities of the exhaustion requirement where defendant has been "put on notice" of plaintiff's claims. *President v. Vance,* 627 F.2d 353, 362 (D.C.Cir.1980); *Smith v. Dalton,* 971 F.Supp. 1, 3 (D.D.C.1997); *Morton v. Mosbacher,* 1991 WL 222290, *3 (D.D.C. October 15, 1991). The reason for such holdings goes to the underlying purpose of the exhaustion requirement, that is to give the agency "the opportunity as well as the responsibility to right any wrong that in might have done." *President,* 627 F.2d at 362. "Adequacy of notice is the core of Title VII's exhaustion requirement." *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985). Finally, this Court has recognized that a defendant may have taken actions that cause it to be estopped from arguing failure to exhaust administrative remedies as a defense to a plaintiff's claims. *See Berry v. Abdnor,* 1989 WL 46761, *2 (D.D.C. April 20, 1989)(citing "equitable principles," such as "if plaintiff were to allege that defendant concealed facts from him or misled him in some other manner," as reasons why "the defen-

dant should be estopped from asserting failure to exhaust administrative remedies as a defense").

The unique circumstances surrounding plaintiff's case clearly provide the Court with reason to excuse him from the exhaustion requirements he confronted. It is uncontested that when plaintiff first received the memorandum on Avenues of Redress on January 7, 1998, no one explained the meaning of this highly complicated document to him. (*See* Pl. Mot. Exh. 1 ¶ 16). The failure to do so was in violation of MD–110's requirement that EEO counselors explain the requirements for initiating a formal complaint. Furthermore, it is undisputed that plaintiff was inexperienced with filing a mixed-case appeal before the MSPB, and it is also undisputed that plaintiff suffered from a mental disability. Thus, it is understandable that plaintiff would be confused when confronted by the forum election provision. While the election requirements indicate that if a claimant has proceedings in two forums, the one filed first is the one that remains valid while the other one is dismissed, the language does not clearly state that the claimant may not withdraw voluntarily from the first proceeding in an effort to ensure that he is proceeding in only one forum. Moreover, immediately following the election forum requirements, the memorandum states that "if your complaint is not resolved at the conclusion of counseling, you may file a formal EEO complaint within 15 calendar days of receipt of the counselor's notice of right to file a discrimination complaint." (Def. Mot. Exh. 1 at 4). The memorandum does not indicate that you may not file a formal EEO complaint at the end of counseling if you have filed an MSPB appeal. Thus, to those unfamiliar with the process and untrained in this area of the law, the memorandum is, at best, confusing.

After the MSPB appeal was filed on January 28, 1998, plaintiff's confusion was further compounded when defendant's EEO Office gave him the Notice of Right to File a formal EEO complaint on February 23, 1998. Plaintiff understood it to indicate that he could file a formal EEO complaint regarding the termination decision. (Pl. Mot. Exh. 1 ¶ 20). Moreover, the Notice of Right to File does not clarify plaintiff's responsibilities, but rather, it appears to permit dual filings since it merely asks the complainant to indicate by checking a box if he has filed an MSPB appeal, and if so, the complainant is merely told that such an appeal could affect whether "[the] complaint is appropriate for processing." (Pl.Mot.Exh. 20). Obviously, a layperson would not be put on notice that he has improperly filed with the agency.

It appears that plaintiff was not represented by counsel when he filed the EEO complaint three days later on February 26, 1998, even though he listed Julie Myers as his counsel on the complaint form. (*See* Def. Mot. Exh. 7 (letter from firm which had represented plaintiff, indicating that plaintiff had been notified that the firm would withdraw from representing him if he failed to make an additional retainer payment by January 31, 1998 and that plaintiff was "advised by telephone that the firm would withdraw from representing him"); Pl. Opp. Exh. 1 ¶¶ 20–21A (plaintiff's affidavit, indicating that he believed that the Notice of Right to File a Discrimination Complaint was served on plaintiff and not his representative and that he learned that he might not be represented when he attempted to contact his attorney about the Notice)). It is not surprising that, believing his counsel was no longer representing him, he endeavored to follow the directions set forth in the Notice of Right to File by filing a formal complaint within 15 days of receipt of the notice.

Having improperly filed both before the MSPB and in the EEO forum, plaintiff made the critical error of withdrawing the wrong complaint after having been misled by the MSPB AJ, who mistakenly informed plaintiff that he would be able to proceed with his claim before the agency if

he withdrew his MSPB appeal. It is undisputed that plaintiff withdrew his appeal before the MSPB for no other reason than to proceed in the EEO forum. (*See* Pl. Mot. Exh. 1 ¶ 24). Rather than acting in bad faith or attempting to obstruct the administrative proceedings, plaintiff only withdrew his claim because of the misinformation given to him by the MSPB AJ.[1] *See Jarrell v. U.S. Postal Service*, 753 F.2d 1088, 1091–92 (D.C.Cir.1985)(finding that plaintiff was excused for noncompliance with filing requirements in Title VII case where "it is the result of justifiable reliance on the advice of another government officer").

Although defendant had several opportunities to correct plaintiff's mistakes, it failed to do so. First, as instructed, plaintiff indicated on his formal EEO complaint that he had in fact appealed the same claims to the MSPB. (Def.Mot.Exh. 4). This should have put defendant on notice immediately that plaintiff's EEO complaint should be dismissed. Although MD–110 does not require defendant to issue a dismissal simultaneously with the acknowledgment it is required to send to a complainant immediately upon receipt of the complaint, it is obvious that the EEOC intended for agencies to notify complainants of dismissals shortly after the formal complaint is received. There was no reason for defendant to delay issuing a dismissal in this case. As reflected in defendant's initial decision issued nearly three months later, after plaintiff's MSPB appeal had already been dismissed with prejudice as withdrawn, the agency's determination required almost no factual investigation. Defendant's failure to take the simple step

of dismissing the complaint in a timely fashion further led plaintiff to believe that his complaint was properly in the EEO forum.

Defendant also could have, and should have, remedied the problem of the duplicative filings during the course of the MSPB proceedings. At the April 13, 1998 telephone conference during which the MSPB AJ recorded plaintiff's withdrawal, the MSPB AJ stated:

> Now understand, Mr. Broom, that this withdrawal is with prejudice which means that you can't come back here if you change your mind. Then you can go ahead and pursue your matters through the EEO forums as you planned. Miss Henry, do you understand what has taken place?

(Def.Mot.Exh. 10). In response, agency counsel Henry responded, "I understand that there has been a withdrawal," but said nothing further. (*Id.*). Thus, defendant knew of plaintiff's intentions to continue pursuing the complaint in the EEO forum, even though he was technically prohibited from doing so. Although Henry states in an affidavit that she asked the MSPB AJ whether defendant could do anything to prevent plaintiff's withdrawal of his claim (Def. Mot. Exh. 11 ¶ 3), there is no evidence in the record that she made any effort to correct both the AJ's and plaintiff's misunderstanding that withdrawal would allow plaintiff to proceed in the EEO forum. It is undisputed that plaintiff was not represented by counsel when he executed the withdrawal of his MSPB appeal. In light of agency counsel's superior knowledge of the administrative complaint process and her awareness that plaintiff

---

1. For this reason, plaintiff's case is distinguishable from the "abandonment" cases cited by defendant. *See Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir.1995)(finding that plaintiff "cut short the administrative process prior to its final disposition" because she failed to "pursue[ ] her administrative claim with diligence and in good faith"); *Vinieratos v. U.S. Dept. of the Air Force*, 939 F.2d 762, 770 (9th Cir.1991)(finding that plaintiff abandoned his claim only after finding that his

"overall pattern of conduct" demonstrated that he "wholly obstructed" the administrative process); *Powell v. Reno*, Civ. Action No. 98–2299(TFH)(D.D.C. Nov. 12, 1999), slip. op. at 2–3(finding that plaintiff failed to exhaust administrative remedies as a result of his failure to act in good faith in the administrative process). The record before the Court contains no evidence of plaintiff engaging in any activity to disrupt or otherwise frustrate the administrative process.

was proceeding *pro se* at the time of the telephone conference, it is fair to conclude that her silence contributed to his misunderstanding that he could proceed in the EEO forum.

Finally, it is uncontested that plaintiff's actions throughout the course of the administrative process have put defendant on notice of plaintiff's discrimination claims, including the informal complaint filed on May 19, 1997 regarding his proposed removal, the informal complaint filed on October 30, 1997 with respect to the Last Chance Agreement he refused to sign, his contact with an EEO counselor on January 7, 1998, his participation in EEO counseling, his filing of an appeal with the MSPB, his filing of a formal EEO complaint with the agency, his withdrawal from the MSPB process with the express understanding that he would be pursuing his claims in the EEO forum, and his compliance with all deadlines and participation in all proceedings mandated by both the MSPB and the agency. The claims that plaintiff now brings before the Court are not new; the issues were all raised in the administrative processes below. Therefore, defendant has had ample notice of plaintiff's claims and the purposes of the exhaustion requirements have been satisfied.

### CONCLUSION

Clearly, the administrative proceedings both before the MSPB and in the EEO forum were completed without any real consideration of the merits of plaintiff's claims. Based on the record before the Court, it appears that plaintiff is now foreclosed from pursuing those claims in either administrative forum. While plaintiff attempted in good faith to navigate defendant's administrative labyrinth, his efforts were foiled at every turn. His rights were not clearly explained, the defendant failed to comply with its policies, and a government official provided misinformation to plaintiff that resulted in his making the fatal mistake of dismissing the one administrative complaint that he was entitled to

pursue. Based on these "special equitable considerations," *Siegel*, 654 F.2d at 777, plaintiff is excused from exhausting his administrative remedies. Therefore, defendant's motion is **DENIED**.