Mary G. **BONNER**, Petitioner,

v.

**MERIT SYSTEMS PROTECTION BOARD**, Respondent.

**Appeal No. 85–2041.**

United States Court of Appeals, Federal Circuit.

Jan. 10, 1986.

Joseph R. Press, Bayonne, N.J., for petitioner.

Michael K. Martin, of the Merit Systems Protection Board, Washington, D.C., for respondent. With him on the brief were Evangeline W. Swift, Gen. Counsel, Mary L. Jennings, Associate Gen. Counsel for Litigation, and Paul G. Streb, Atty., Washington, D.C.

Before BALDWIN, NIES, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Petitioner Mary G. Bonner appeals from the final decision of the Merit Systems Protection Board (Board), Docket Nos. NY04328410527 and NY03518510036, October 31, 1984, dismissing for want of jurisdiction her appeal of a reassignment by reduction in force (RIF). We affirm.

## BACKGROUND

Petitioner was employed by the Department of the Army and was covered by a collective bargaining agreement between that agency and the American Federation of Government Employees (AFGE). This appeal involves the proper interpretation of that agreement as it relates to the jurisdiction of the Board.

By statute, an employee "may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a) (1982). By regulation, "[a]n employee who has been furloughed for more than 30 days, separated, or demoted by a reduction-in-force action may appeal to the Merit Systems Protection Board." 5 C.F.R. § 351.901 (1984). Thus, the Board customarily has jurisdiction over such RIF actions.

However, the Board's customary jurisdiction may be affected if the employee, like the petitioner here, is covered by a collective bargaining agreement. By regulation, aside from exceptions not applicable here, "matters which are covered by a negotiated grievance procedure under 5 U.S.C. 7121 may not be appealed to the Board." 5 C.F.R. § 1201.3(b) (1984).

The statute, 5 U.S.C. § 7121 (1982), provides:

(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances.... [T]he procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

The collective bargaining agreement here contains two pertinent articles, Article XI (GRIEVANCES) and Article XIII (RIF). The first section of Article XI reads:

Section 1. This Article provides a method for settlement of employee grievances. This procedure will be the only avenue available to employees for the processing and final disposition of grievances. The scope of this grievance procedure is only restricted as provided in Section 7121 of the Civil Service Reform Act of 1978.

Article XIII provides:

Section 1. Reduction-in-force as used herein is defined as the Employer's action to reduce the number of occupied positions within the unit requiring the

use of reduction-in-force procedures set forth in applicable regulations to implement such actions....

Section 2. ... All reductions-in-force will be executed in strict compliance with applicable laws and regulations.

The Board concluded that the agreement here "does not exclude RIF actions from being redressed through the negotiated grievance procedure," and dismissed the appeal for want of jurisdiction. Petitioner argues that the Board erred in construing the agreement because Article XIII excludes RIFs from the application of the grievance procedure. She argues that, by requiring *strict* compliance with regulations which provide for an appeal to the Board, the agreement does exclude RIFs from the grievance procedure and the Board, therefore, does have jurisdiction.

## OPINION

■ As we understand the regulation in light of the statute, if an employee is covered by a collective bargaining agreement, matters which customarily would be within the appellate jurisdiction of the Board are deemed to be covered by the negotiated grievance procedure and thus beyond the Board's jurisdiction, unless a matter is excluded from the application of the grievance procedures. *See Moreno v. Merit Systems Protection Board*, 728 F.2d 499 (Fed.Cir.1984).

This appeal presents two questions for our review. The first question is whether this RIF action is a "matter" within the meaning of 5 U.S.C. § 7121. The second question is whether this RIF action is excluded from the application of the negotiated grievance procedure.

## I

Our first task is to determine the meaning of the term "matter" as it appears in section 7121. The government argues that the Board's decision should be affirmed because there is a distinction between RIF rights and appeal rights, and that the agreement's RIF article, Article XIII, makes no reference to appeal rights or

procedures for resolving disputes regarding RIF actions. Therefore, according to the government, *appeals* from RIF actions are not excluded from the negotiated grievance procedure.

The government's argument requires that the term "matter" be interpreted to recognize a distinction between an underlying action (such as a RIF) and an appeal from that action, and that the term embrace only the latter. There is a degree of support for this view in the legislative history. The committee report on the Senate bill, S. 2640, states that the parties "may negotiate into coverage under their grievance procedure many of the matters that are covered by statutory appeal procedures, such as appeal from ... reduction-in-force actions." S.Rep. No. 969, 95th Cong., 2d Sess. 109 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2831.

However, there is considerable support in the legislative history for a contrary view, that the term "matter" embraces the underlying action. In discussing subsection (d) of the bill's version of the grievance procedures section, the Senate report uses the term matter to describe underlying actions.

Subsection (d) provides that a negotiated grievance procedure may cover any *matter* over which an agency has authority so long as it does not otherwise conflict with the provisions of this subchapter, and so long as it doesn't include any *matters* involving examination, certification and appointment, suitability, classification, political activites, retirement, life and health insurance, national security or the Fair Labor Standards Act.

*Id.* at 110, 1978 U.S.Code Cong. & Ad.News at 2832 (emphasis added). Moreover, in discussing the subsection (e) option of using the negotiated grievance procedure or the statutory procedure, the Senate report refers to "*appealing* matters covered under 5 U.S.C. section 4303 (demotion or removal for unacceptable performance)." *Id.* (emphasis added).

There are similar references to underlying actions in the House Report. Referring to "matters" which may not be processed through the negotiated grievance procedure, the report specifies that those "matters" include Hatch Act violations and suspensions or removals for reasons of national security. H.R.Rep. No. 1403, 95th Cong., 2d Sess. 56 (1978), *reprinted in* Legislative History of the Civil Service Reform Act of 1978, at 636, 693 (1979). Likewise, the statute itself, in other subsections of section 7121, uses the term "matter" to describe the underlying action. *E.g.*, 5 U.S.C. § 7121(d) (1982) (prohibited personnel practice is a "matter").

■ These legislative uses of the term "matter" compel a conclusion that the government's view does not represent a sound analysis of the statutory language and is inconsistent with the clear meaning of the statute. *See Al Tech Specialty Steel Corp. v. United States*, 745 F.2d 632, 642 (Fed.Cir.1984). We hold that this RIF action is a "matter" within the meaning of 5 U.S.C. § 7121(a)(2). Just as the statute excludes from the negotiated grievance procedure the underlying action of "a suspension or removal under section 7532," so the agreement may exclude from the negotiated grievance procedure the underlying action of a RIF. The significance of our holding is that if a collective bargaining agreement does exclude the underlying action of a RIF, then the RIF action is not a "matter" covered by a negotiated grievance procedure and the Board retains its customary appellate jurisdiction over an appeal from that RIF action.

## II

■ In deciding whether the agreement here excluded RIFs from the negotiated grievance procedure, the Board* applied an incorrect legal standard. The Board cited one of its own cases for the proposition that the collective bargaining agreement must "specifically" exclude a matter. *Sir-*

*kin v. Department of Labor*, 16 M.S.P.R. 432, 436 (1983). That gloss is no part of the statute, its legislative history, or the regulation. The correct standard is the standard contained in the statute, whether the collective bargaining agreement excludes a matter from the application of the negotiated grievance procedure.

■ It is unfortunate that "[o]ur review of the [Board's] decision ... has been hampered" because the Board "did not specify the factual or legal grounds for its decision." *Werner v. United States*, 642 F.2d 404, 408, 226 Ct. Cl. 462 (1981). For example, the Board made no findings on the intent of the parties in drafting the agreement or on their course of dealing in implementing it. Although the regulation states that a petitioner has the burden of proof on the issue of jurisdiction, 5 C.F.R. § 1201.-56(a)(2) (1984), the Board may not summarily dismiss a petitioner's appeal "by merely stating that [petitioner] has such a burden and that he has not sustained it." *Buchanan v. United States*, 621 F.2d 373, 383, 223 Ct.Cl. 291 (1980). Nor does the Board's decision discuss the relationship between Articles XI and XIII of the agreement, or how the Board's conclusion squares with the principles of contract interpretation. Indeed, "[t]he Board articulates no ground," *Kowal v. United States*, 412 F.2d 867, 873, 188 Ct.Cl. 631 (1969), for its conclusion that the agreement does not exclude RIF actions from the negotiated grievance procedure. Such a bare conclusion devoid of analysis "is inimical to a rational system of administrative determination and ultimately inadequate." *Beckham v. United States*, 392 F.2d 619, 623, 183 Ct.Cl. 628 (1968).

■ However, since the interpretation of contract provisions is a matter of law, *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984) (contract interpretation presents question of law which this court may decide for itself); *Letenyei v. Department of Trans-*

---

* The presiding official's initial decision became the final decision of the Board in accordance with 5 C.F.R. § 1201.113(b) when the full Board denied Bonner's petition for review. *See generally Schaffer v. Merit Systems Protection Board*, 751 F.2d 1250, 1252, 1254 (Fed.Cir.1985).

*portation, FAA,* 735 F.2d 528, 531 (Fed. Cir.1984) (interpreting provision of collective bargaining agreement), in the interest of judicial economy we will not remand this case. For the following reasons, we hold that upon applying the correct legal standard RIFs were not excluded from the negotiated grievance procedure set forth in the collective bargaining agreement which covered petitioner.

First, regarding the course of dealing of the parties, there is evidence in the record indicating the agency's interpretation. By a form letter dated October 18, 1983, the agency notified Bonner of the RIF; that letter also contained information on the degree of some rights Bonner did or did not have—including a section headed: *"Appeal or Grievance Rights* The X'd paragraph applies to you." The first paragraph dealt with appeals to the Board. The second paragraph dealt with grieving the RIF. Of the two paragraphs, only this second paragraph was indicated as applicable to Bonner and it read:

> (X) You may grieve this reduction in force action and/or any determination concerning your entitlement to grade or pay retention under the negotiated grievance procedure existing between this Headquarters and AFGE Local 2855.

The letter is consistent with the view that one of the contracting parties, the agency, understood the contract not to exclude a RIF from the negotiated grievance procedure.

Second, Bonner disputes the agency's interpretation of the agreement. She argues that the agency's interpretation of the agreement renders the RIF article, Article XIII, meaningless. If correct, that might be a strong argument in Bonner's favor. *Cf. W.M. Schlosser Co. v. United States,* 767 F.2d 870, 874 (Fed.Cir.1985) (rejecting an interpretation which renders contract language superfluous). However, we do not agree that it is correct. Initially, we note that the six sections of Article XIII grant to employees and to the union rights that are greater than the rights required by regulation. Further, even if Bonner's argument were understood to be restricted to the language in the first and second sections quoted above, we do not agree with it on the factual circumstances of this case. The first section refers to an *employer's* action and the regulatory procedures for *implementing* a RIF. Similarly, the second section requires strict compliance in *executing* a RIF. It is possible that the contracting parties were addressing actions the employer must take and were not addressing the employee's choice of forum for resolving a dispute about those actions. In sum, we are not persuaded that Article XIII excludes a RIF from the negotiated grievance procedure.

Despite the able argument of her counsel, we are not persuaded that the presiding official erred in deciding that Bonner failed to establish jurisdiction. Therefore, the Board's decision is affirmed.

AFFIRMED.