Norma GUERRA, Appellant,

v.

Andrew CUOMO, Secretary, Department of the Housing and Urban Development, Appellee.

No. 97–5338.

United States Court of Appeals, District of Columbia Circuit.

May 25, 1999.

Alan Banov was on the brief for appellant.

Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, Lena Robins, Special Assistant U.S. Attorney, and Anthony J. De Marco, Counsel, Department of Housing and Urban Development, were on the brief for appellee. Fred E. Haynes, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG and ROGERS, Circuit Judges and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant Norma Guerra, a former employee of the Department of Housing and Urban Development ("HUD"), complained for many years that painting in her office building exacerbated her respiratory condition.[1] She sought accommodation from HUD, including prior notification of painting times and relocation to another office or her home to work, but she was never accommodated to her satisfaction. In 1991, Guerra filed a union grievance, claiming that HUD had failed reasonably to accommodate her disability. Despite HUD's alleged recalcitrance, neither Guerra nor the union took her claim to the next step of the negotiated grievance procedure. Over the next three years, Guerra continually requested but failed to obtain the full accommodation she sought.

In 1995, Guerra filed a formal EEO complaint, alleging that HUD had violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., by failing to accommodate her disability. In January 1997, she filed suit in the district court based upon the allegations in her EEO complaint. HUD moved to dismiss the complaint on the ground that Guerra's earlier decision to file a union grievance constituted an irrevocable election of remedies. The district court agreed, ruling that Guerra's EEO complaint involved the same "matter" as her union grievance, and was therefore barred. The district court also ruled that HUD's failure to raise the election of remedies issue prior to moving to dismiss did not constitute a waiver of that defense. Guerra filed a motion for reconsideration, and while that motion was pending, HUD issued a final agency decision dismissing her EEO complaint. See 29 C.F.R. § 1614.301(a) ("Any ... complaint filed after a grievance on the same matter shall be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure including the right to appeal to the Commission from a final decision."); see id. § 1614.107(c) & (d). In 1998 the district court denied Guerra's motion for reconsideration, again ruling that her grievance and her EEO complaint concerned the same matter and that HUD had not waived the election of remedies defense.

On appeal, Guerra raises several contentions, only one of which requires discussion, namely that her 1991 union grievance and her 1995 EEO complaint raised different "matters." Under the Civil Service Reform Act of 1978, "[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both."[2] 5 U.S.C. § 7121(d)(1994); see

---

1. In 1991, a doctor diagnosed Guerra with Reactive Airway Disease and advised HUD that "she has sensitivity to multiple chemicals, including dust, fumes, and inhalant chemicals." Compl. ¶ 64.

2. Thus, if the grievance and the complaint raise the same "matter," an employee who has elected to pursue a grievance would be prohibited from filing an EEO complaint on the same "matter."

*Johnson v. Peterson,* 996 F.2d 397, 399 (D.C.Cir.1993). A prohibited personnel practice includes disability discrimination under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791. *See* 5 U.S.C. § 2302(b)(1)(D). The Civil Service Reform Act further provides that:

> [a]n employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.

*See id.* § 7121(d). It is undisputed that Guerra filed her grievance, in writing, in 1991. Notwithstanding HUD's failure to accommodate her to her satisfaction, Guerra failed to exhaust her remedies under the grievance procedures, never taking her grievance to Step 2 or Step 3 or to arbitration.[3] The dispositive question, therefore, is whether Guerra's grievance and her later filed EEO complaint involve the same "matter" thereby precluding a lawsuit based upon the EEO complaint.

▮ Guerra maintains that the district court erred in ruling that her union grievance and her EEO complaint involve the same "matter," and attempts to distinguish her filings. She points to differences in the remedies sought, or capable of being sought, in the grievance and the EEO complaint. Specifically, she notes that she did not seek money damages or reassignment in her grievance but did in her EEO complaint. Similarly, she states that her EEO complaint, unlike her union grievance, alleged that chemicals in addition to paint caused her injury. However, she does not contend that something other than a failure to accommodate her respiratory condition was the underlying employment action at issue in both the grievance and the complaint. Instead, raising a type of continuing violations theory, Guerra contends that denials by different officials of separate requests for accommodation constitute distinct legal claims, and that HUD recognized that her separate requests raised distinct legal claims by requiring medical documentation for every request and evaluating each claim anew.

The contours of the term "matter" are not readily apparent from the face of the statute. Looking to congressional intent, some courts have suggested an approach that focuses on the underlying employment action. In *Facha v. Cisneros,* 914 F.Supp. 1142, 1148–49 (E.D.Pa.1996), *aff'd,* 106 F.3d 384 (3d Cir.1996) (unpublished table decision), one of the cases on which the district court relied, the Pennsylvania court noted that interpreting "matter" too narrowly would undercut Congress' reliance upon collective bargaining agreements in the Civil Service Reform Act of 1978, while interpreting "matter" too broadly would create a trap for the unwary in view of the election of remedies provision in § 7121(d). Facha, a senior trial attorney at HUD, filed an EEO complaint alleging sex discrimination and retaliation for prior EEO activity. One month earlier, she had filed a grievance pursuant to her collective bargaining agreement, alleging reprisal for union activity. The government moved to dismiss her complaint on the ground that although her union

---

**3.** Under the agreement between the American Federation of Government Employees and HUD, at Step 1, an employee unable to resolve a grievance through informal attempts may advise the immediate supervisor within 30 working days from the date the employee became, or should have become, aware of the matter being grieved. The immediate supervisor is to issue a written response within five working days. If that response is unsatisfactory, the employee may advance to Step 2 by forwarding the grievance to a management representative who, after meeting with the employee and the employee's representative, is to issue a written reply. If still unsatisfied, the employee may proceed to Step 3 by forwarding the grievance to the Director of a Headquarters office, Regional Administrator, or Area Manager. From Step 3 the employee may proceed to arbitration.

grievance and EEO complaint presented different legal theories, they covered the same "matter." Drawing on the analysis in *Bonner v. Merit Systems Protection Board,* 781 F.2d 202, 204–05 (Fed.Cir. 1986), the district court formulated a test for determining whether a grievance and a complaint cover the same "matter": "If [the employee] raised a topic in both documents, or if the arbitrators assigned to handle the grievance would necessarily have needed to inquire into a topic in discharging their duties, then § 7121(d) bars her from raising that same topic in her subsequent EEO complaint." *Facha,* 914 F.Supp. at 1149.[4] The district court concluded that whether a union grievance and an EEO complaint concern the same "matter" under § 7121(d) does not depend upon "the legal status of the act complained of" or upon "legal jargon." *Id.* at 1148. Applying that test, the court held that Facha prevailed on three discrete claims; two were not mentioned in the grievance and an arbitrator assigned to resolve Facha's grievance would not have needed to inquire about the third.

The scope of the term "matter" has been discussed in a few other cases as well, most adopting the *Facha/Bonner* analysis or its equivalent. *See Van Houten v. Gober,* No. Civ. A.98–270, 1998 WL 966021, at *5 (E.D.Pa. Nov. 10, 1998) (citing *Bonner* and *Facha*); *Bobeck v. Department of Health & Human Servs.,* No. 95 C 4778, 1996 WL 89111, at *7 (N.D.Ill. Feb.27, 1996) (citing *Bonner*); *Timus v. Whitfield,* Civ. A. No. 87–2699, 1988 WL 25509, at *1 (D.D.C. March 10, 1988). The term "matter" becomes somewhat amorphous when the personnel action involves the denial of accommodation or other relief due to a disability over an extended period of time, rather than a promotion or other discrete act. As noted, courts have tended to construe the term "matter" to encompass more than a legal claim and instead to encompass the "underlying action," *Bonner,* 781 F.2d at 204–05, or the "topics" raised, *Facha,* 914 F.Supp. at 1149. The term "matter" may also have a temporal component, as some courts have noted, where the matter concerns an employer's action with "effects" over an extended period of time, *Bobeck,* 1996 WL 89111, at *7, or separate actions, "on a different day," by "a different decisionmaker," *Van Houten,* 1998 WL 966021, at *6.

Even if these authorities do not provide a definitive interpretation of the term "matter," a question we need not decide, Guerra proposes so narrow a construction of "matter" that it would render the election requirement meaningless. While contending that her EEO complaint raised a different "matter" than her grievance, she admits in her brief that her EEO complaint "principally attacked action or inaction by different agency officials during the period of August 1994–December 1994." For this to suffice to distinguish the "matter" covered in her grievance from that in her EEO complaint would mean that an employee could simply formulate an EEO complaint on the basis of dissatisfaction with the results of the grievance process. This is precisely the result that the election of remedies provision in § 7121(d) was meant to avoid. *See Facha,* 914 F.Supp. at 1148–49. The same is true of Guerra's contention that her EEO complaint sought "alternative accommodations"—"to take work home, to be paid administrative leave with pay whenever the Agency did not so accommodate her, ... to be reassigned permanently to a different building," and to be awarded

---

4. In *Bonner,* 781 F.2d at 204–05, the Federal Circuit concluded that "matter" refers to the underlying employment action. The issue was whether under the Civil Service Reform Act an appeal from an underlying reduction in force is within the jurisdiction of the Merit Systems Protection Board when the reduction force itself is not. Although the legislative history was not entirely clear, it was sufficiently clear to satisfy the Federal circuit that, for purposes of determining the jurisdiction of the Board, Congress intended the term "matter" to include not just the appeal from an underlying employment action, but also the underlying action itself. *See id.*

compensatory damages. If this contention, which comes on the heels of her concession that her EEO complaint, "[l]ike the 1991 grievance ... claimed that the Agency wrongly denied [her] the accommodation allowing her to take work home," were sufficient to create separate matters, then any employee could file an EEO complaint that was otherwise identical to her previously filed grievance except that it requested one form of accommodation not included in the grievance. Unlike *Van Houten*, where the issues underlying the grievance did not necessarily require resolution of a separate issue underlying the EEO complaint, 1998 WL 966021, at *6, or *Facha*, where some claims in the EEO complaint had not been raised in the grievance, 914 F.Supp. at 1149, Guerra does not contend that the accommodations she sought in her EEO complaint would not have been considered in the process of resolving her grievance.

It is true that Guerra's case is different from *Facha* insofar as she alleges continuing violations by HUD, not simply a discrete action like denial of a promotion. Her initial grievance also long preceded her attempt to pursue relief by filing an EEO complaint. *Cf. Smith v. Kaldor*, 869 F.2d 999, 1003–04 (6th Cir.1989). But her admissions on appeal underscore the reality that the topics in her EEO complaint are the same as those she presented in her union grievance. The continuing violations doctrine applies in the civil rights context in order to avoid statute of limitations problems when an employer commits repeated, but distinct, discriminatory acts, some inside and some outside of the limitations period. *See Bazemore v. Friday*, 478 U.S. 385, 394–95, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). Arguably, a similar theory could be advanced by analogy where an employer takes a number of actions against an employee (including failing to respond appropriately to requests for working accommodations) and the employee wishes to avoid being bound by a single election made years before. Certainly, an election under § 7121(d) cannot

reasonably be transmogrified into an election for one's working life no matter what changes are made to the complaint. Insofar as Guerra could have filed a new grievance on a different "matter," she had the option to file an EEO complaint instead. In any event, Guerra falls short of successfully presenting this legal question. Rather than continuing violations with separate illegal acts by HUD, if anything Guerra has suffered what amounts to "continuing effects of past discriminatory acts." *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991). As the Seventh Circuit has observed, "[a] lingering effect of an unlawful act is not itself an unlawful act." *Dasgupta v. University of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir.1997).

■ Put otherwise, a request, a second request, or even repeated requests, embracing the same basic accommodation for the same basic condition cannot be viewed as a different "matter". Attempting to distinguish between filings based on the relief sought, such as the request for compensatory damages in the EEO complaint misses the mark: whatever the scope of the definition of the term "matter," minimally it must have some bearing to the underlying employment action and the rights at issue, as distinct from being governed solely by the remedy sought. *See generally* Dan B. Dobbs, *Dobbs Law of Remedies* § 1.1, at 1–2 (1993). Hence, Guerra has presented no factual basis upon which to apply a continuing violations theory under § 7121(d).

■ Guerra's other contentions need not detain us. Her contention that her union grievance was not "timely file[d]," and therefore not an election of remedies, is raised for the first time on appeal and we decline to address it. *See Boehner v. Anderson*, 30 F.3d 156, 162 (D.C.Cir.1994). Her contention that HUD waived its election of remedies defense is based on an overly expansive reading of *Bowden v. United States*, 106 F.3d 433 (1997), inasmuch as HUD had not reached a final

decision on Guerra's EEO complaint when it asserted the election of remedies defense. *See id.* at 438.

Accordingly, because Guerra cannot demonstrate that her EEO complaint involves a "matter" different from that raised in her union grievance, HUD did not waive the election of remedies defense, and her other contentions are meritless, we affirm the judgment of the district court.