NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0446n.06
Filed: June 25, 2007

No. 06-5272

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| DONNA REDMON, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| NORMAN MINETA, Secretary, United States | ) COURT FOR THE WESTERN |
| Department of Transportation, | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendant-Appellee. | ) |

BEFORE:    KEITH and COLE, Circuit Judges; and OLIVER, District Judge.[*]

**DAMON J. KEITH, Circuit Judge.**  Plaintiff-Appellant Donna Redmon ("Redmon")

appeals the district court's grant of Defendant-Appellee Norman Mineta, Secretary of the United

States Department of Transportation's ("DOT") motion to dismiss or, alternatively, for summary

judgment.  For the reasons set forth below, we **AFFIRM** the district court's judgment.

**I.**

Redmon is an air traffic control specialist employed in Memphis, Tennessee by the Federal

Aviation Administration ("FAA"), an agency administered by the DOT.  Redmon has been employed

with the FAA since June 1991, and previously served thirteen years as an air traffic controller in the

United States Navy.  In 1991, a few months after she had been hired by the FAA, she filed an Equal

Employment Opportunity ("EEO") complaint and a police report against a fellow FAA employee,

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

Barry Harwood ("Harwood"), for inappropriate touching at a company Christmas party. Consequently, Harwood was removed from the control room. Harwood later became an operations manager at the FAA Memphis Center.

In July 2001, Redmon and a fellow air traffic control specialist, Joseph House ("House"), commenced a romantic relationship. The relationship ended in January or May of 2003. On August 8, 2003, while Redmon and House were working together controlling aircraft during the midnight shift, they began quarreling about their former relationship. When House became unresponsive, Redmon struck him on his upper thigh and called him a vulgar expletive. House immediately complained about the incident to the area manager, Dan Alan.

On August 14, 2003, Redmon was "temporarily" reassigned to work in the Quality Assurance Office pending an investigation into the incident. On October 6, 2003, she received notice from area supervisor James Kyle ("Kyle") of a proposed fourteen day unpaid suspension. The panel that had made the proposed suspension decision was composed of Kyle, Harwood, Charles Richard Taylor, and Cecil Hoyer ("Hoyer"). On October 22, 2003, Redmon appealed the proposed discipline pursuant to Step 1, Section 8, of Article 9[2] of the collective bargaining agreement ("CBA") in place between the FAA and the National Air Traffic Controllers Association (the "union"). As a result of her written request for informal resolution through the union, the suspension was reduced to seven days. Redmon served her unpaid suspension from December 8, 2003 through December 15, 2003.

After the suspension, Redmon was still not allowed to return to the control room. She was

---

[2] This provision of the CBA provides for "Grievances filed by employees" and directs that "[a]n aggrieved employee shall request in writing informal resolution of his/her grievance from his/her immediate supervisor[.]" (J.A. at 182).

required to train, certify, and maintain operational currency in another area of specialization in order to work in another area of the Memphis facility. One of the consequences of the reassignment was a postponement of her retirement eligibility. On December 23, 2003, pursuant to the second step of the CBA union negotiated employee grievance procedure, the union filed a formal grievance on behalf of Redmon challenging her suspension and reassignment.[3] Consequently, an oral presentation was held on January 9, 2004.

During the oral presentation, Redmon challenged her suspension; removal from the control room; and obligation to train, certify, and maintain operational currency in another area of specialization that placed her in a pass/fail[4] situation. She alleged that the disciplinary actions imposed on her for a first offense of striking a co-worker were excessive and not in line with other regional disciplinary actions taken for similar offenses by other employees. She asserted that she had been singled out, treated differently, and that her rights had not been protected. Following consideration of her presentation, the grievance was denied by Hoyer. Redmon demanded that the union pursue the matter through arbitration, but the union declined to proceed with arbitration.

On February 17, 2004, Redmon contacted Cynthia Marzette ("Marzette"), an internal EEO counselor for the FAA. Marzette attempted an informal resolution with Hoyer, but it was unsuccessful. On March 9, 2004, Redmon filed a written EEO complaint alleging sex discrimination, hostile work environment, and reprisal for protected activity. On March 22, 2004,

---

[3] Article 9, Section 8, Step 2 of the CBA provides that "[i]f the employee or Union is not satisfied with the answer [rendered in response to the written request for informal resolution under Step 1 of the CBA], a formal grievance may be submitted[.]" J.A. at 182.

[4] The result of failing the certification process could be discharge.

the EEO denied the complaint on the grounds that Redmon had elected to pursue the union negotiated grievance process rather than the EEO process and thus was foreclosed from the EEO process pursuant to 29 C.F.R. § 1614.107(a)(4).[5] The EEO denial letter informed Redmon of her right to appeal the decision within 30 days with the EEO or to file suit in federal district court within 90 days.

On June 15, 2004, Redmon filed suit in the district court alleging sex discrimination, sexual harassment, hostile work environment, and reprisal for protected activity under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* On October 31, 2005, the DOT moved to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, for summary judgment. On February 3, 2006, the district court granted the DOT's motion. The district court found that it was without subject matter jurisdiction over the action because Redmon had not timely exhausted her administrative remedies since she did not consult with an EEO counselor within 45 days of an alleged discriminatory act as required under 29 C.F.R. § 1614.105(a)(1). The district court noted that Redmon did not assert in her opposition that the EEO time limitation should be subject to tolling or waiver, or that the relevant acts were actionable as part of a continuing violation. The district court further rejected Redmon's reprisal claim on the grounds that the alleged retaliatory acts occurred before she engaged in protected activity.

The present appeal timely ensued.

**II.**

---

[5] 29 C.F.R. § 1614.107(a)(4) provides that "the [EEO] shall dismiss an entire complaint: . . . [w]here the complainant has raised the matter in a negotiated grievance procedure that permits allegations of discrimination[.]"

We review the district court's grant of summary judgment *de novo*. *Howard ex rel. Howard v. Bayes*, 457 F.3d 568, 571 (6th Cir. 2006). A district court's order of dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is also reviewed *de novo*. *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007).

### III.

Redmon argues that the district court erred in granting the DOT's motion to dismiss or for summary judgment because she timely exhausted administrative remedies and triable issues of material fact remain as to her Title VII claims for sex discrimination, sexual harassment, hostile work environment, and reprisal for protected activity. We disagree and find that summary judgment dismissing the complaint was appropriate because Redmon failed to exhaust her administrative remedies as to each of her claims.

It is well-settled that "[a] person seeking to bring a discrimination claim under Title VII in federal court must first exhaust her administrative remedies." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976)).

> A federal employee who suffers an adverse employment action and believes such action was discriminatory may challenge such adverse action in one of three ways. The aggrieved employee may file a direct appeal of the adverse action to the MSPB [Merit Systems Protection Board], file a grievance under his or her union's negotiated grievance procedure, or file a formal complaint with the EEOC [Equal Employment Opportunity Commission]. The aggrieved employee's election of any one of these three enumerated options precludes election of the other two.

*Marbly v. Rubin*, 202 F.3d 269, 2000 WL 32009, at *2 (6th Cir. Jan. 4, 2000) (table) (unpublished) (internal citations omitted); *see also* 5 U.S.C. § 7121(d) & (e). Thus, "[a]n aggrieved employee

affected by a prohibited personnel practice [including discrimination based on sex] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d); *see also Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989).

Here, according to the record on summary judgment, it is undisputed that Redmon elected to challenge her suspension and reassignment under her union's negotiated grievance procedure (the CBA in place between the FAA and the union).[6] Further, as she admitted in the district court proceedings, Redmon fully completed the procedures available under the CBA.[7] Redmon completed the union negotiated grievance procedure before she filed a complaint with the EEO. Since Redmon elected to pursue her union's negotiated grievance procedure to challenge her suspension and reassignment *before* submitting the EEO complaint, she was foreclosed from utilizing the EEO administrative procedure to challenge these adverse employment actions. *See* 5 U.S.C. § 7121(d) & (e)(1); 29 C.F.R. § 1614.107(a)(4).

Redmon argues that she did not elect the union grievance procedure for the Title VII claims presented in the district court because she did not raise any claims for discrimination in the union negotiated grievance procedure and only raised these discrimination claims in the EEO charge. (Appellant's Br. 14 n.3). This argument is unavailing because both Redmon's union grievance and

---

[6] J.A. at 10, 219, 226, 229 n. 3, 231. It is also undisputed that an employee may raise claims of sex discrimination and retaliation for protected activity under the CBA. *See* J.A. at 181.

[7] The final stage of grievance procedures provided for arbitration, but only the union could request arbitration. (J.A. at 276) ("The right of individual presentation does not include the right of taking the matter to arbitration unless the Union agrees to do so.")). Redmon petitioned her union for arbitration, but the union denied her request.

EEO charge dealt with the "same matters" within the meaning of 5 U.S.C. § 7121(d).  The fact that she advanced different legal theories to challenge these actions in the union grievance and EEO complaint is inconsequential.  "An aggrieved employee who files a grievance with an agency [such as the FAA] whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the *same matter* [with the EEO]. . . irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination." 29 C.F.R. § 1614.301(a) (emphasis added).  As the United States Court of Appeals for the Tenth Circuit has aptly noted, under 5 U.S.C. § 7121(d), the term "matter" "refer[s] to the underlying government action which precipitated the complaint[,]" not the legal theory employed to challenge the government action.  *Giove v. U.S. Dept. of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006) (unpublished) (citing *Bonner v. MSPB*, 781 F.2d 202, 204-05 (Fed. Cir. 1986)); *see also Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) (discussing how under § 7121(d) "courts have tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action . . . or the 'topics raised[.]'").

Under the union negotiated grievance procedure, Redmon challenged her suspension; removal from the control room; and obligation to train, certify and maintain operational currency in another area of specialization that placed her in a pass/fail situation.  She alleged that her suspension was issued in an untimely manner; and that supervisor Kyle did not handle her situation appropriately because he did not explain the charges and what had been taken into consideration in determining her punishment.  She further claimed that the disciplinary actions imposed on her for the first offense of striking a co-worker were excessive and not in line with other regional

disciplinary actions taken for similar offenses by other employees. She asserted that she had been singled out, treated differently, and that her rights had not been protected.

In her EEO complaint Redmon advance three theories of discrimination: disparate treatment, hostile work environment, and reprisal. Specifically, under a disparate treatment theory, she argued that her unpaid leave and removal from the control room exceeded the disciplinary actions imposed on male employees and that this disparity was on account of her sex. She argued that she was subject to a hostile work environment because the male members of her former work shift and House's friends sided entirely with House and would not listen to her side of the story about the August 8, 2003 incident. Redmon also claimed reprisal on the grounds that supervisor Hoyer retaliated against her by "keeping [her] away from [her] air traffic position, keeping [her] from earning full benefits, and destroying [her] career" because of her "earlier complaints of discrimination." (J.A. at 21).

It is clear that both Redmon's union grievance and EEO complaint dealt with the same adverse employment actions or "underlying government action" — to wit, her suspension, removal from the control room, and obligation to train, certify, and maintain operational currency in another area of specialization. Thus, the union grievance and EEO complaint involved the "same matters" within the meaning of section 7121(d), and the EEO complaint is barred. *See* 5 U.S.C. § 7121(d); *Bonner*, 781 F.2d at 204-05. Therefore, as Redmon was foreclosed from bringing the EEO complaint, only the union grievance can be considered by this Court.

The question before this Court then is whether Redmon exhausted her administrative remedies as to her Title VII claims in the union grievance procedure. In the complaint before the

district court, Redmon argued that she was treated differently because of her sex since "her discipline far exceeded that given to similarly situated male employees." (J.A. at 10). She argued that the male employees created a "sexually charged hostile working environment" and that her employer knew of this hostile environment but failed to protect her. In the union grievance, Redmon never argued that she was subjected to sexual harassment or a sexually hostile work environment. Although she argued in the union grievance proceedings that her discipline was excessive and not in line with other regional disciplinary actions taken for similar offenses by other employees, and that she had been singled out and treated differently, she never argued that this disparity was due to her sex. She also never argued that the discipline imposed upon her was in retaliation for her 1991 EEO complaint or any other protected activity. As such, it is clear that Redmon failed to raise her sex discrimination, sexual harassment, hostile work environment, and reprisal for protected activity claims in the union grievance procedure, even though she could have raised such claims. Accordingly, Redmon failed to exhaust her administrative remedies as to the Title VII claims raised before the district court.

In the proceedings below, the district court held that Redmon had not exhausted her administrative remedies. In reaching this conclusion, the district court focused its analysis on the fact that Redmon failed to demonstrate that she had filed her EEO complaint within 45 days of any adverse employment action. The district court's emphasis on the timing of the EEO complaint was misguided, since Redmon's election of the union negotiated grievance procedure foreclosed her ability to file the EEO complaint on the "same matters." However, this error by the district court was harmless, because, as discussed above, Redmon failed to exhaust her administrative remedies under the union grievance procedure. As such, we conclude that summary judgment was properly entered

in favor of the DOT.

Because we find that the present case was properly dismissed by the district court on summary judgment, we need not reach the propriety of the lower court's dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Similarly, we need not discuss Redmon's equitable tolling argument because the argument would not alter our disposition, since it relates only to the timeliness of Redmon's filing of the foreclosed EEO complaint.[8]

**IV.**

For the aforementioned reasons, we **AFFIRM** the district court's judgment.

---

[8] As an aside, we note that Redmon's counsel conceded during oral argument that the equitable tolling argument was not raised in the lower court.