**Richard Allen ROSELL, Plaintiff,**

v.

**Pat WOOD, III, Chairman, Federal Energy Regulatory Commission, Defendant.**

**No. 03–934 (RJL).**

United States District Court, District of Columbia.

July 26, 2004.

Wendu Mekbib, Law Offices of Wendu Mekbib, Vienna, VA, for Plaintiff.

Marina Utgoff Braswell, US Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is the defendant's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment. The defendant Federal Energy Regulatory Commission ("FERC") moves to dismiss plaintiff Richard Allen Rosell's complaint, which alleges unlawful employment discrimination based on age and disability in violation of the Age Discrimination in Employment Act ("ADEA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). 29 U.S.C. § 621 *et seq.;* 29 U.S.C. § 791 *et seq. cum* § 794(a)(2000). For the following reasons, the Court GRANTS the defendant's motion to dismiss for lack of subject matter jurisdiction.

## BACKGROUND

### I. *Factual Background*

At the time this action was filed, the plaintiff, Richard Allen Rosell ("Rosell"), a fifty-one year old male, was employed as an auditor in FERC's Division of Regulatory Audits ("DRA"). Compl. ¶ 5. Rosell had worked for FERC for twenty-four years. *Id.* This case arises from Rosell's allegations of employment discrimination based on his age and disability. Rosell alleges a fourteen-year struggle with diabetes, which caused him to suffer high blood pressure, vertigo, insomnia, and other health issues requiring medical attention on an unpredictable schedule. *Id.* ¶ 26.

In November 2002, Rosell was assigned to perform four annual charge audits on independent service operators ("ISOs") as part of a larger auditing project. *Id.* ¶ 8. Rosell alleges that until January 28, 2003, he believed Dwight Siddell ("Siddell") was his Team Leader, instead of Timothy

Smith ("Smith"), a younger colleague because Siddell assigned Rosell to the ISO project and provided him with the project milestones. *Id.* ¶¶ 8–11. However, at a January 28, 2003 team meeting, Smith allegedly attacked and criticized Rosell's work product, beginning "a process of hostility and oppression that has yet to abet [sic]." *Id.* ¶ 11. According to Rosell, Smith's hostile treatment continued in a series of email exchanges regarding the completion of working papers.[1] *Id.* ¶ 12.

Over the next two weeks, Smith and Rosell engaged in ongoing email correspondence regarding Rosell's failure to produce his completed working papers for Smith's review. Pl.'s Opp., Ex. 2, Subexhibits ("Subexs.") 6–8. During this period, Michael Oliva ("Oliva"), Director of DRA, held a staff meeting to discuss the unscheduled absence request procedure. Pl.'s Opp., Ex. 2. Subex. 2 at 1. The next day, Rosell requested nine hours leave for an unscheduled absence.[2] *Id.*

On February 13, 2003, Rosell received a written warning from Siddell about his lack of work ethic. Pl.'s Opp., Ex. 2, Subex. 1. The warning stated that because of

Rosell's senior status, he must work independently and complete his assigned work within a reasonable amount of time or Siddell would file disciplinary actions. *See id.* On February 14, 2003, Rosell received a leave restriction notification from Oliva that cited concerns about Rosell's unscheduled absences, his failure to properly request leave, and his low leave balances. Pl.'s Opp., Ex. 2, Subex. 2. The leave restriction notification required Rosell to provide a physician's statement for illness-related absences and also terminated Rosell's participation in the Alternative Work Schedule or Flexiplace programs. *Id.* at 2.

## II. *Procedural Background*

On February 24, 2003, Rosell emailed FERC's Equal Employment Opportunity ("EEO") office to ask about filing an EEO complaint. Pl.'s Opp., Ex. 1, Attachment ("Attach.") 9. On February 25, 2003, Rosell filed a written grievance with his immediate supervisor, John Okrak ("Okrak") under Article 18 of FERC's Labor/Management Agreement.[3][4] Pl.'s Opp., Ex. 2; Pl.'s Opp., Ex. 1, Attach. 3 (Article 18 Grievance Procedure). The grievance alleged

---

1. The following is text from an email in which, according to Rosell, Smith "express[ed] not only his open hostility but also demean[ed] what [Rosell] had done in manners and methods for which is it hard to find a parallel": "For each reference to 'the spreadsheet' please explain specifically which spreadsheet you are referring to. For example, you could say, 'the spreadsheet in response to our date request for ....' I believe there are 4 such references. 1 in PJM, 2 in NYISO and 1 in CAISO. Also you have a spelling error in question 3 of CAISO and you don't need any commas in question 2 of PJM. Please fax these immediately after making these changes. Also please provide me with the working papers you've currently completed by noon tomorrow." Compl. ¶ 12; Pl's Opp., Ex.1, Attachment ("Attach.") 12, Subexhibit ("Subex.") 5.

2. On February 10, 2003, Rosell again tried to take 2.5 hours of unscheduled annual leave;

Oliva rejected the request and charged Rosell with being absent without leave. Pl.'s Opp., Ex. 2, Subex. 2.

3. FERC's Labor/Management Agreement is the collective bargaining agreement negotiated on behalf of FERC employees by the American Federation of Government Employees ("AFGE") Local 421. Although Rosell avers that his AFGE Local 421 membership expired on December 31, 2001, he "recognizes that [he is] an employee in the bargaining unit of the Agency." Pl.'s Stat. of Facts ¶ 1; Pl.'s Opp., Ex. 1 ¶ 2. Employees that are not union members are still bound by procedures contained within the collective bargaining agreement.

4. Rosell references several DRA employees in his complaint, but does not explicitly describe the DRA organizational structure. With regard to his supervisors, Rosell has alleged the following: John Okrak ("Okrak") was a Su-

that Smith's conduct regarding Rosell's working papers, the warning from Siddell, and the leave restriction notification from Oliva were actions taken in retaliation for Rosell's ongoing appeal in a lawsuit regarding his overtime pay ("previous suit") against FERC.[5] Pl.'s Opp., Ex. 2 ¶ 8. Over the next nine days, Rosell tried to schedule a meeting to discuss filing an EEO complaint.[6] Pl.'s Opp., Ex. 1, Attachs. 9–11. On March 7, 2003, FERC received what Rosell refers to as the "Charge of Discrimination," which alleged that Smith's conduct, the warning, and the leave restriction notification were all motivated by age and disability discrimination directed at Rosell.[7] Pl.'s Opp., Ex. 1, Attach. 12.

On April 2, 2003, Madeline Lewis ("Lewis"), FERC's EEO Manager, informed Rosell that she would dismiss his EEO complaint because he had filed a grievance based on the same set of facts first. Pl.'s Opp., Ex. 1, Attach. 16 (Lewis letter). Lewis explained Rosell's obligation to pursue his discrimination claims through the negotiated grievance procedure and his right to appeal the procedural dismissal of his EEO claims to either the Equal Employment Opportunity Commission ("EEOC") or to a United States District Court ("district court"). *Id.* Also on April 2, 2003, John Delaware, Rosell's second-level supervisor, wrote to Rosell and informed him that he had until April 9, 2003 to amend his grievance to include his allegations of age and disability discrimination.[8] Pl.'s Opp., Ex. 1, Attach. 6 (Dela-

5. In this previous suit, filed in June 2001, Rosell alleged that FERC had denied him overtime pay for business travel during non-duty hours. *Rosell v. Wood,* 2002 WL 32396260, at *1 (D.D.C. Mar.27, 2002). The district court dismissed the case for lack of subject matter jurisdiction because Rosell failed to exhaust his administrative remedies. *Id.* at *6. On January 24, 2003, FERC was served with Rosell's opening brief for the May 6, 2003 hearing on Rosell's appeal from the district court's dismissal. Pl.'s Opp. 6. This was four days before the January 28 team meeting during which Smith allegedly attacked and criticized Rosell's work product. The D.C. Circuit later affirmed the lower court's decision to dismiss for lack of subject matter jurisdiction. *Rosell v. Wood,* 2003 WL 21186040 (D.C.Cir. June 7, 2003).

6. According to 29 C.F.R. § 1614.105(a)(2003), any employee who believes he has been discriminated against on the basis of race, color,

pervisory Auditor and Rosell's immediate supervisor; John Delaware ("Delaware") was the Chief Accountant and Deputy Director of DRA and Rosell's second-level supervisor; and Thomas Herlihy was the Executive Director of DRA and Rosell's third-level supervisor. Def.'s Mot. to Dismiss 4 n.3. Although Siddell and Smith supervised Rosell's participation on project teams, neither of them appears to have had any administrative supervision over Rosell.

religion, sex, national origin, age or handicap must consult an EEO counselor to try to informally resolve the matter before moving to file a complaint. The employee must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory ...." *Id.* § 1614.105(a)(1). At the initial counseling meeting, counselors advise employees of their rights and responsibilities in writing. *Id.* § 1614.105(b)(1). If the matter is not resolved, the counselor will inform the employee in writing of his right to file a discrimination complaint. *Id.* § 1614.105(d).

7. Rosell disputes the characterization of his "Charge of Discrimination" as an EEO complaint. Pl.'s Stat. of Facts ¶ 3. However, nowhere does Rosell dispute that he submitted the Charge of Discrimination to FERC; indeed, Rosell included the document among the documents he submitted to this Court. Pl.'s Opp., Ex. 1, Attach. 12. Despite Rosell's arguments to the contrary, this Court will treat the Charge of Discrimination as Rosell's attempt to file a written EEO complaint since it is a "written complaint." 29 C.F.R. § 1614.301(a).

8. Article 19 is the Negotiated Grievance Procedure for Processing Matters Involving Discrimination contained within Rosell's collective bargaining agreement. Article 19 provides the mechanism for resolving com-

ware letter). On April 9, 2003, Rosell responded to Delaware's letter and indicated that he was affirmatively choosing not to pursue his discrimination claims through the grievance process. Pl.'s Opp., Ex. 1, Attach. 7 at 4. On April 24, 2003, Rosell filed this action against FERC alleging age and disability discrimination in violation of ADEA and the Rehabilitation Act. The complaint does not include a retaliation claim.

## DISCUSSION

### I. *Standard of Review*

The United States and its agencies are immune from suit unless Congress has expressly provided consent to be sued. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). There is thus a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in this case, to establish that the Court has subject matter jurisdiction over the actions by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Thompson v. Capitol Police Bd.*, 120 F.Supp.2d 78, 81 (D.D.C.2000).

Where a motion to dismiss presents a dispute over the factual basis of the Court's subject matter jurisdiction, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" and therefore "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Re-public of Angola*, 216 F.3d 36, 40 (D.C.Cir. 2000); *see In re Swine Flu Immunization Products Liability Litigation*, 880 F.2d 1439, 1442–43 (D.C.Cir.1989). Rule 12(b) of the Federal Rules of Civil Procedure otherwise requires that a motion to dismiss be considered according to summary judgment standard if the movant submits matters outside of the pleadings that are not excluded by the Court. Fed.R.Civ.P. 12(b), 56; *see also IMS v. Alvarez*, 129 F.3d 618, 619 n. 1 (D.C.Cir.1997).

### II. *Claims under the Civil Service Reform Act ("CSRA")*

#### A. *Statutory Background*

The Civil Service Reform Act of 1978 ("CSRA") protects the rights of federal employees to collectively bargain and sets forth how negotiated grievance procedures should interact with statutory employment procedures. *See* 5 U.S.C. § 7101 (2000); *Cornelius v. Nutt*, 472 U.S. 648, 666, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985) (Marshall, J., dissenting). Under the CSRA, a federal employee, who believes he has been discriminated against and whose collective bargaining agreement provides for a negotiated grievance procedure addressing discrimination claims, may file *either* a grievance or an EEO complaint, but not both.[9] 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a) (2003). If an employee files a timely written grievance before filing a written EEO complaint, he has irrevocably chosen the negotiated grievance procedure, and is precluded from filing an EEO complaint on the same matter. *See AFGE. Local 2052 v. Reno*, 992 F.2d 331, 332 (D.C.Cir. 1993); *Johnson v. Peterson*, 996 F.2d 397,

---

plaints based on discrimination because of age (§ 19.1.2) and disability (§ 19.1.4), among others. Pl.'s Opp., Ex. 1, Attach. 4.

**9.** The regulations governing the interaction between the negotiated grievance and EEOC procedures encompass claims alleging discrimination on the basis of age or handicap, as in the current action. 29 C.F.R. § 1614.103(a).

399 (D.C.Cir.1993) (citing *Vinieratos v. Dept. of the Air Force*, 939 F.2d 762, 768 (9th Cir.1991)). Judicial review is available to the employee alleging discrimination only after he has fully exhausted his administrative remedies in dealing with his grievance.[10] *See Johnson*, 996 F.2d at 401.

### B. *Failure to Exhaust Administrative Remedies under the CSRA*

FERC moves for dismissal for lack of subject matter jurisdiction on the following grounds: (1) Rosell irrevocably elected to pursue any discrimination claims through the negotiated grievance procedures, and (2) Rosell failed to exhaust the administrative remedies available to him under the grievance process. For the following reasons, the Court agrees and grants FERC's motion to dismiss for lack of subject matter jurisdiction.

### 1. Election of Negotiated Grievance or Statutory Procedure

FERC asserts that Rosell elected to pursue his discrimination claims through the negotiated grievance procedure once he chose to file his grievance before filing an EEO complaint. According to 29 C.F.R. § 1614.301(a), an employee "who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the *same matter* under [the EEO com-

plaint procedure] irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination." (emphasis added). FERC asserts that Rosell's February 25, 2003 grievance regarding Smith's conduct, the warning regarding his lack of work ethic, and the leave restriction notification barred Rosell's subsequent EEO complaint based on the "same matter," and thus, committed Rosell to pursuing his claims through the grievance process.

■■■ The dispositive issue before the Court is thus whether Rosell's grievance and complaint concern the "same matter." The term "matter" in 5 U.S.C. § 7121(d) and 29 C.F.R. § 1614.301(a) has been interpreted to refer to the "underlying [government] action" that gives rise to the grievance or complaint. *Bonner v. Merit Systems Protection Board*, 781 F.2d 202, 204 (Fed.Cir.1986); *Macy v. Dalton*, 853 F.Supp. 350, 353 (E.D.Ca.1994) (noting that "the 'matter' to which § 7121(d) refers is not plaintiffs' discrimination claim, but rather" the underlying government action giving rise to the claim.) In *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C.Cir.1999), the D.C. Circuit referred to the following test for determining if an employee has raised the same matter in a grievance and EEO complaint: "If [the employee] raised a topic in both documents, or if the arbitrators assigned to handle the grievance would necessarily have needed to inquire

---

**10.** An employee may raise two types of complaints under 29 C.F.R. § 1614, "pure discrimination" complaints or "mixed case" complaints. According to 29 C.F.R. § 1614.302(a)(1), a mixed case complaint is "a complaint of employment discrimination filed with a Federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board ('MSPB')." Actions appealable to the MSPB include removal, reduction in grade, and reduction in pay,

among others. *See* 5 U.S.C. §§ 7512, 7701(a), 7702. In the current action, the leave restrictions and warning of subpar performance given to Rosell do not qualify as actions appealable to the MSPB. Therefore, for purposes of navigating the procedures outlined in 29 C.F.R. § 1614, the Court will treat Rosell's complaint as a pure discrimination complaint. As discussed later, the implication of this distinction is that Rosell would only have been able to appeal the final agency action to the EEOC, not to the MSPB.

into a topic in discharging their duties, then § 7121(d) bars [the employee] from raising that same topic in [the employee's] subsequent EEO complaint." (quoting *Facha v. Cisneros,* 914 F.Supp. 1142, 1149 (E.D.Pa.1996)).

■ FERC argues that Rosell's February 25, 2003 grievance and his March 7, 2003 Charge of Discrimination concern the same matter because both documents reference the same three agency actions as the basis for Rosell's claims, even though the legal theory and relief sought are different. Def.'s Mot. to Dismiss 6–7. FERC further argues that Rosell's election to file a grievance based on these actions barred future EEO complaints based on the same actions, and committed Rosell to addressing his discrimination claims through the negotiated grievance process. *Id.* at 7. In response, Rosell simply argues that he is entitled to bring separate grievance and EEO complaint actions based on the same three agency actions because his grievance only alleged retaliation, and not age or disability discrimination. Pl.'s Opp. 8, 23. Rosell does not contend that his Charge of Discrimination was based on any agency actions other than the three actions also referred to in his grievance.

The Court finds that Rosell's grievance and complaint concern the same matter and that Rosell's decision to file his griev-

ance first committed him to resolving his retaliation and discrimination claims through the grievance process rather than through the EEO framework. It is undisputed that on February 25, 2003. Rosell filed a grievance based on the warning about his job performance, his leave restrictions, and the alleged fabrication of misconduct and performance deficiencies. Pl.'s Opp. 7–8, Ex. 1 at 5 (Rosell Aff.). Although Rosell contacted the EEO office to ask about filing an EEO complaint on February 24, he did not file a written complaint prior to filing his grievance. On March 7, 2003, FERC received Rosell's EEO complaint alleging the warning, leave restrictions, and hostile conduct were the result of age and disability discrimination. Despite Rosell's attempts to word the grievance and EEO complaint differently, the grievance and complaint reference the same three underlying government actions: Smith's alleged fabrication of malfeasance, misconduct, and failure to perform on Rosell's part; the February 13, 2003 written warning about Rosell's work performance; and the February 14, 2004 leave restriction notification.[11] Compl. ¶¶ 14, 18, 21; Pl.'s Opp., Ex. 2 ¶¶ A–C. A side-by-side comparison of Rosell's grievance and complaint show nearly identical language to describe Rosell's alleged injuries.[12] Moreover, any person investigating his discrimination and retaliation claims

---

11. Rosell argues that the grievance and EEO complaint deal with separate matters because his grievance never explicitly alleges age or disability discrimination, only retaliation for his prior lawsuit. Indeed, Rosell appears to believe that not mentioning the express word "discrimination" in his grievance creates a different "matter." For example, in his grievance, Rosell writes, "The hostility, negativism and oppression has continued unabated. Untruth, misrepresentation, of what I have done and baseless charges of misconduct have continued to mount against me, albeit without a modicum of justification." Pl.'s Opp., Ex. 2 ¶ 7. Similar language appears in Rosell's com-

plaint: "The hostility, negativism and oppression *directed at me because of my age have* continued unabated. Untruth, misrepresentation, of what I have done and baseless charges of misconduct have continued to mount against me, albeit without a modicum of justification. None of my youthful colleagues have been subjected to the adverse actions, hostility or disparity ...." Pl.'s Opp., Ex. 1, Attach. 12 ¶ 9 (emphasis added).

12. *See, e.g.,* Pl.'s Opp., Ex. 2 ¶ 6 (grievance); Pl.'s Opp., Ex. 1. Attach. 12 ¶ 8 (Charge of Discrimination).

would have to evaluate the same set of underlying employment actions. Although Rosell's grievance and complaint present different legal theories, they are rooted in the same factual nucleus, and therefore, concern the same matter. *See Macy*, 853 F.Supp. at 354 ("[I]f an employee chooses the grievance route, she may not thereafter file an EEO complaint regardless of whether her grievance alleged unlawful discrimination."); *see also O'Dwyer v. Snow*, 2004 WL 444534, at *8 (S.D.N.Y. Mar.10, 2004). Accordingly, Rosell's decision to file his grievance before filing a written EEO complaint committed him to resolving his dispute through the negotiated grievance procedure.

### 2. Failure to Comply with Grievance Procedure

As Rosell chose to pursue a grievance procedure, this Court would only have subject matter jurisdiction if he had properly exhausted his administrative remedies. *See AFGE, Local 205*, 992 F.2d at 336; *Johnson*, 996 F.2d at 401. Once a final agency decision has been rendered on a grievance alleging employment discrimination, the employee may appeal the decision to the EEOC. *See* 29 C.F.R. § 1614.401(d); *Dept. of the Air Force v. FLRA*, 316 F.3d 280, 283 (D.C.Cir.2003) ("the EEOC has final review authority over any decision resulting from the grievance procedure involving discrimination within the EEOC's jurisdiction."); *Johnson*, 996 F.2d at 400. The employee may then appeal an adverse EEOC decision to the district court. *See* 29 C.F.R. § 1614.407(c)-(d).

■ In the current action, Rosell's collective bargaining agreement required him to follow a three-step procedure to resolve his retaliation and discrimination grievances before he could appeal the final agency decision to the EEOC.[13] FERC argues that Rosell's failure to exhaust his administrative remedies under his negotiated grievance process, namely, his failure to properly amend his grievance to include his discrimination claims, deprives this Court of subject matter jurisdiction over the current action. Def.'s Mot. to Dismiss 7–8. In response, Rosell simply states that "he has fulfilled every responsibility he has under [his collective bargaining agreement] within the plain language of the contract." Pl.'s Opp. 2; *see also* Pl.'s Opp., Ex. 1 ¶ 6 (Rosell Aff.). For the following reasons, the Court agrees with FERC and finds that Rosell failed to comply with proper grievance administrative procedure in two ways.

First, Rosell affirmatively chose not to amend his grievance to include the age and disability discrimination claims he now asserts in this action.[14] *See* Pl.'s Opp., Ex. 1,

---

**13.** Under Article 19 of FERC's Labor/Management Agreement, at Step 1, Rosell and management would have had to attempt informal resolution of Rosell's grievance. If a final resolution could not be reached, Rosell would have had twenty calendar days from the end of the informal resolution period to file a written formal grievance with the Executive Director ("ED"). The ED then would have fifteen business days from the receipt of the written grievance to attempt to resolve the complaint and/or appoint an investigator. Step 2 of the grievance procedure requires the appointed investigator to complete his investigation within sixty calendar days of his appointment, and to prepare a report of his findings. The ED would then have fifteen

business days to render a written decision on the grievance. If the employee is not satisfied with the Step 2 resolution, Step 3 permits him to ask the Union to refer the matter to arbitration. The final agency decision is then either the Union's refusal to refer the matter to arbitration or the final result of the arbitration process. Pl.'s Opp., Ex. 1, Attach. 4 § 19.5.

**14.** In his April 9, 2003 letter to John Delaware, Rosell "respectfully decline[s] the suggestion that [his] EEO claims filed with the Commission be subject to processing pursuant to Article 19 of the Labor/Management Agreement." Pl.'s Opp., Ex. 1, Attach 7 at 4.

Attach. 7. Consequently, the only issue carried forward in his grievance was his Article 18 retaliation claim, which he does not allege here.[15] Second, Rosell misinterpreted Lewis' explanation of his right to appeal the procedural dismissal of his EEO complaint. Rosell insists that Lewis specifically told him he could "file a civil action in an appropriate United States district court." Pl.'s Opp. 3. Rosell appears to ignore the express language of Lewis' notice, which informed him of his right to contest the *procedural* dismissal of his EEO complaint. Pl.'s Opp., Ex. 1, Attach. 16 at 2. He does not contest that procedural dismissal in this suit, but instead, makes substantive age and disability discrimination claims. The only way Rosell could receive judicial review of the merits of his discrimination claims was to amend his grievance to include the discrimination claims and appeal the final agency action on the grievance to the EEOC, and then to the district court following a ruling on his EEOC appeal.

· In short, for whatever reason, Rosell has followed improper procedure and has failed to exhaust the administrative remedies available to him under the negotiated grievance procedures in pursuing his discrimination claims. As his collective bargaining agreement explicitly provided a grievance procedure for discrimination claims, once Rosell irrevocably elected to file a grievance instead of an EEO complaint, he had to amend his grievance to include his discrimination claims or lose the right to assert them. Barring any equitable considerations excusing his failure to follow proper administrative procedure, this Court must dismiss Rosell's action for lack of subject matter jurisdiction.

### C. *Equitable Considerations Excusing Failure to Exhaust Administrative Remedies*

▬▬ When appropriate, the Court may excuse a plaintiff's failure to exhaust his administrative remedies before resorting to the judicial process on the basis of equitable considerations, such as plaintiff's intelligence and familiarity with the process or defendant's misconduct. *See Broom v. Caldera,* 129 F.Supp.2d 25, 26–28 (D.D.C.2001) (failure to exhaust administrative remedies excused because plaintiff suffered mental disability, was unrepresented by counsel, and received incorrect advice from MSPB Administrative Judge); *see also Berry v. Abdnor,* 1989 WL 46761, at *2 (D.D.C. Apr.20, 1989) (defendant could be estopped from asserting a failure to exhaust "if plaintiff were to allege that defendant concealed facts from him or misled him in some other manner . . . .").

FERC argues that Rosell was fully aware of the need to follow proper administrative procedures because the court in Rosell's previous suit found that he did not comply with the correct grievance procedure in that action. *See Rosell v. Wood,* 2002 WL 32396260, at *6 (D.D.C. Mar.27, 2002); Def.'s Mot. to Dismiss 8. Moreover, FERC argues that both Lewis and Delaware advised Rosell with regard to proper procedure. Def.'s Mot. to Dismiss 3–4. In response, Rosell argues that FERC employees, including Lewis, the EEO Manager, gave him incorrect guidance on how to pursue his EEO claims, and even told him to file this action. Pl.'s Opp. 3, 21.

---

**15.** It appears that Rosell failed to follow proper procedure and exhaust his administrative remedies even on his Article 18 retaliation claim. After the Union declined to refer Rosell's retaliation grievance to arbitration, Rosell was statutorily entitled to appeal that final agency decision to the EEOC. 29 C.F.R. § 1614.301(a). This Court has been presented with no information indicating that the Rosell took any such appeal action within the allotted time.

The Court agrees with FERC and finds that Rosell has shown no equitable considerations sufficient to excuse his failure to follow proper procedure and to exhaust his administrative remedies. Unlike the plaintiff in *Broom,* Rosell does not allege that he suffers from a mental disability, nor that he was unrepresented by counsel.[16] Instead, Rosell's sole argument appears to be that Lewis told him he could file this suit. While incorrect advice on how to proceed with an employment complaint from a person in a position of knowledge may under certain circumstances excuse a failure to exhaust one's administrative remedies, this justification does not apply in the current case. In her April 2, 2003 letter, Lewis explained that she had to dismiss Rosell's EEO complaint because he filed a grievance on the same matter first and that Rosell had an obligation to raise his discrimination claims as part of his pending grievance. Pl.'s Opp., Ex. 1, Attach. 16 at 2. She also explained Rosell's right to appeal the procedural dismissal to either the EEOC or to the appropriate district court. *Id.* at 2–3.

Furthermore, Delaware, Rosell's second-level supervisor, wrote separately to inform him that his election of the grievance procedure required him to amend his grievance to include the discrimination allegations. Pl.'s Opp., Ex. 1, Attach. 6. Delaware's letter outlined the process that Rosell would have to follow and stated the deadline for Rosell's decision whether to proceed with the Article 19 discrimination grievance. *Id.* at 1. Rosell provides no evidence that either Lewis or Delaware misled him as to the process or gave him the incorrect date by which he had to make the decision to amend his grievance. Instead, Rosell merely presents his own letter in which he affirmatively chose not to pursue his discrimination claims through the grievance process based on his belief that he should be allowed to pursue his discrimination claims through an EEO complaint. Accordingly, this Court finds that Rosell has neither alleged nor demonstrated equitable considerations that would excuse his failure to exhaust his administrative remedies in asserting his age and disability discrimination claims. Rosell's sole argument in response to the defendant's motion to dismiss is that he and his counsel believe that he is entitled to pursue, in parallel, a civil action alleging age and disability discrimination and a grievance alleging retaliation based on the exact same underlying government actions. As previously noted, he is incorrect. As the Court lacks subject matter jurisdiction over Rosell's claims, it will grant FERC's motion to dismiss.

### ORDER

For the reasons set forth above, it is this 26 day of July, 2004, hereby

**ORDERED** that the defendant's motion to dismiss [Dkt # 4] is **GRANTED**; and it is further **ORDERED** that the above captioned action is dismissed with prejudice.

**SO ORDERED.**

---

**16.** Indeed, Rosell lists Wendu Mekbib, his lawyer in the current action, as "Complainant's Counsel" on the first page of his "Charge of Discrimination." Pl.'s Opp., Ex. 1, Attach. 12.