**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

GARRY HEIMRICH,

           *Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF THE ARMY; MARK T. ESPER, Secretary, Department of the Army,

           *Defendants-Appellees.*

</td>
<td>

No. 18-36005

D.C. No.
3:17-cv-01615-
HZ

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted November 7, 2019
Portland, Oregon

Filed January 16, 2020

Before:  Ronald Lee Gilman,[*] Richard A. Paez,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Gilman

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Civil Service Reform Act of 1978

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of a former federal employee's Equal Employment Opportunity ("EEO") complaint challenging his removal from his position as a power-plant mechanic with the United States Army Corps of Engineers.

5 U.S.C. § 7121(d), a provision of the Civil Service Reform Act of 1978, provides that unionized federal employees seeking to bring discrimination claims may "raise the matter" through either (1) their union's negotiated procedure, or (2) their agency's EEO office, "but not both."

Plaintiff initially challenged his removal by filing a grievance through his union's negotiated procedure, and then filed a separate complaint with the Army Corps' EEO office. Plaintiff contended on appeal that his EEO complaint contained allegations of a hostile work environment that were not presented in his collective bargaining agreement ("CBA") grievance, so the complaint did not raise the same "matter."

The panel held that plaintiff's EEO complaint raised the same matters as previously covered in plaintiff's union grievance, which was prohibited by § 7121(d). Specifically, the panel held that the term "matter" in § 7121(d): referred to the underlying action in the CBA grievance or the EEO

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

complaint; was broader than legal theory; and referred to the factual basis of the employee's adverse action. The panel further held that it would not impute a hostile-work-environment claim where no such allegation expressly appeared in plaintiff's EEO complaint. The panel concluded that plaintiff's attempt to raise new legal arguments to challenge his termination failed under § 7121(d). The panel noted that, although plaintiff's EEO complaint was barred, there was a procedure available to raise the hostile-work-environment claim: had plaintiff exhausted the union grievance procedure, he could have appealed to the Equal Employment Opportunity Commission, and then amended his CBA grievance under 29 C.F.R. § 1614.106(d) to pursue a hostile-work-environment claim before the Commission.

## COUNSEL

Shaun Ryan Yancey (argued), Melville Johnson P.C., Atlanta, Georgia; Craig A. Crispin, Crispin Employment Law PC, Portland, Oregon; for Plaintiff-Appellant.

Jared D. Hager (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams United States Attorney; United States Attorney's Office, Portland, Oregon; for Defendants-Appellees.

**OPINION**

GILMAN, Circuit Judge:

This case focuses on 5 U.S.C. § 7121(d), a provision of the Civil Service Reform Act of 1978. Section 7121(d) provides that unionized federal employees seeking to bring discrimination claims may "raise the matter" through either (1) their union's negotiated procedure, or (2) their agency's Equal Employment Opportunity (EEO) office, "but not both."

Garry Heimrich was removed from his position as a power-plant mechanic for the United States Army Corps of Engineers in 2016. He initially challenged his removal by filing a grievance through his union's negotiated procedure. He then filed a separate complaint with the Army Corps's EEO office. The Army Corps contends that the EEO complaint raises the same matters as previously covered in Heimrich's union grievance, which is prohibited by § 7121(d). Heimrich, in response, argues that his EEO complaint contains allegations of a hostile work environment, a separate matter not explicitly raised in his union grievance. The district court agreed with the Army Corps, granting the latter's motion to dismiss Heimrich's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Heimrich worked as a power-plant mechanic for the Army Corps from September 2011 to July 2016, at which time he was terminated from his position. In its notice to Heimrich, the Army Corps cited as reasons for Heimrich's removal his defiance towards supervisors, noncompliance

with leave procedures, submission of fabricated medical documents in leave requests, and disruptive behavior.

Heimrich was a member of the United Power Trades Organization (UPTO). He was thus covered under the collective bargaining agreement (CBA) between UPTO and the Army Corps, which allows UPTO and its members to file grievances against the agency. In August 2016, UPTO filed a grievance on Heimrich's behalf, challenging his termination as discriminatory and retaliatory. The CBA grievance described a difficult relationship between Heimrich and the Army Corps, which was "exacerbated by both personal issues being dealt with by Mr. Heimrich and by actions the [Army Corps] has taken in response to the symptoms of the stress related disability diagnosed in Mr. Heimrich."

More specifically, the CBA grievance alleged that Heimrich was "under constant observation by [Army Corps] management" and that he was subject to selectively imposed performance standards and leave restrictions. This heightened scrutiny, the CBA grievance asserted, allowed the Army Corps to gather negative material on Heimrich and to ultimately remove him from his position. Heimrich's CBA grievance also generally cited violations of the Americans with Disabilities Act, as well as CBA Article 4.1, which prohibits "discrimination on the basis of race, color, religion, sex, national origin, age, mental or physical disabilities, and reprisal."

The Army Corps upheld Heimrich's termination at the first step of the CBA grievance procedure. UPTO then submitted the CBA grievance to the next step of the negotiated procedure, and the Army Corps again upheld its decision. UPTO finally requested that the CBA grievance be submitted to arbitration.

At that point, Heimrich filed a formal complaint with the Army Corps's EEO office.  The EEO complaint alleged that Heimrich's termination resulted from discriminatory and retaliatory treatment.  Specifically, Heimrich argued that he had been discriminated against due to (1) his disability status as an alcoholic, and (2)  the race of his wife and children, who are African American  (Heimrich is Caucasian). Heimrich further alleged that he was retaliated against because he raised safety concerns in Army Corps meetings. The complaint also described several specific acts by Army Corps employees not contained within Heimrich's CBA grievance.

In October 2016, the Army Corps's EEO office dismissed the complaint, informing Heimrich that the EEO office could not consider his claims because he had made a prior election to pursue the matter via the negotiated grievance procedure.  Heimrich filed an appeal of the dismissal with the Equal Employment Opportunity Commission (EEOC) the following month.  While awaiting the EEOC's decision, Heimrich withdrew his request for arbitration of his CBA grievance.

The EEOC affirmed the Army Corps's dismissal of Heimrich's complaint in January 2017.  Heimrich's request for reconsideration was subsequently denied, and the EEOC informed of him of his right to file an appeal in federal district court.  He then timely proceeded to file his federal-court complaint.

The Army Corps moved to dismiss Heimrich's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  After determining that Heimrich's CBA grievance and his EEO complaint raised the same "matter," the district court granted the Army Corps's motion on the basis that Heimrich's EEO complaint

was filed in contravention of 5 U.S.C. § 7121(d).  *See Heimrich v. Dep't of Army*, No. 3:17-CV-01615, 2018 WL 1938296, at *5 (D. Or. Apr. 20, 2018).  This appeal followed.

## II.  ANALYSIS

### A.  Standard of review

Dismissal for failure to state a claim is a question of law that we review de novo.  *Kruso v. Int'l Tel. & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint "does not need detailed factual allegations," but the plaintiff must provide more than "labels and conclusions" to withstand scrutiny under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.  In evaluating such motions, "[w]e accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party."  *Zadrozny v. Bank of N.Y. Mellon,* 720 F.3d 1163, 1167 (9th Cir. 2013) (citations omitted).

### B.  The Civil Service Reform Act of 1978

The Civil Service Reform Act of 1978 (CSRA) establishes labor-management-relations practices for most federal workers.  5 U.S.C. § 7101 *et seq*.  Recognizing that "the right of employees to organize, bargain collectively, and participate through labor organizations . . . safeguards the public interest," 5 U.S.C. § 7101(a)(1)(A), the CSRA authorizes specified employees to "form, join, or assist any labor organization,"  5 U.S.C. § 7102.  The CSRA provides for the formation of collective bargaining agreements

(CBAs) between labor organizations and federal agencies, 5 U.S.C. § 7114, and it requires that CBAs "provide procedures for the settlement of grievances," 5 U.S.C. § 7121(a)(1). A CBA's procedures constitute the "exclusive administrative procedures for resolving grievances which fall within its coverage," with several noted exceptions. *Id.*

The provision of the CSRA in question in the present case, 5 U.S.C. § 7121(d), constitutes one such exception. Section 7121(d) sets forth the options available to unionized federal employees who, like Heimrich, raise grievances involving allegations of discrimination. Where the employee is affected by one of the discriminatory practices listed under 5 U.S.C. § 2302(b)(1)—and where the applicable CBA allows employees to raise discrimination claims—§ 7121(d) establishes two alternative means by which to raise the "matter."

The aggrieved employee may, as one option, raise the matter by filing a grievance under the "negotiated procedure" described in the CBA. *See id.*; *see also* 29 C.F.R. § 1614.301(a). In the alternative, the employee may raise the matter under the "statutory procedure" by filing a formal complaint with the employing agency's EEO office. *See* 5 U.S.C. § 7121(d); *see also* 29 C.F.R. § 1614.301(a). The employee "shall be deemed to have exercised his option" under § 7121(d) when he or she files the grievance or the EEO complaint, whichever first occurs. *See* 5 U.S.C. § 7121(d). These procedures are mutually exclusive, meaning that an aggrieved employee seeking redress for a prohibited personnel practice under the CSRA may "raise the matter under a statutory procedure or the negotiated procedure, *but not both*." *Id*. (emphasis added); s*ee also Vinieratos v. U.S. Dep't of the Air Force*, 939 F.2d 762, 768

(9th Cir. 1991) (explaining that an employee's election is irrevocable).

## C. Defining the term "matter" under 5 U.S.C. § 7121(d)

At issue is whether Heimrich's CBA grievance and his EEO complaint raised the same "matter" under § 7121(d). Heimrich contends that his EEO complaint contains allegations of a hostile work environment that were not presented in his CBA grievance, so that the grievance and the complaint did not raise the same "matter." The Army Corps, however, argues that Heimrich's EEO complaint covers the same matters previously raised in his CBA grievance. Therefore, the Army Corps argues, the EEO office properly dismissed Heimrich's EEO complaint.

The district court noted that "[b]inding Ninth Circuit case law that interprets the term 'same matter' under 5 U.S.C. § 7121(d) and 29 C.F.R. § 1614.301(a) is sparse." *Heimrich*, 2018 WL 1938296, at *4. Cases outside this circuit, however, provide guidance. The leading cases are *Bonner v. Merit Systems Protection Board*, 781 F.2d 202 (Fed. Cir. 1986), and *Facha v. Cisneros*, 914 F. Supp. 1142 (E.D. Pa. 1996), *aff'd*, 106 F.3d 384 (3d Cir. 1996) (unpublished table decision).

The Federal Circuit in *Bonner* held that the term "matter" under § 7121(d) refers to the "underlying action" challenged in the CBA grievance or the EEO complaint. 781 F.2d at 205. In reaching this conclusion, the court looked to congressional reports preceding the enactment of the CSRA, which largely used the term "matter" to refer to the underlying actions by the agency. *Id*. at 204. The court also noted that other subsections of § 7121 refer to underlying government actions as "matters." *Id*. at 204–205. To assign any other definition to the term, the court decided, would be

"inconsistent with the clear meaning of the statute." *Id*. at 205.

In *Facha*, the district court embraced the definition of the term "matter" in *Bonner* and established the following test: if the aggrieved employee "raised a topic in both" the CBA grievance and the EEO complaint, or if those assigned to handle the CBA grievance or the EEO complaint would "necessarily have needed to inquire into a topic in discharging their duties," then the employee has raised the same matter. 914 F. Supp. at 1149. This inquiry requires the court to "focus on the 'matter' that the employee raised . . . , not on legal jargon." *Id.* at 1148.

A number of courts in other circuits have relied on the approach set forth in *Bonner* and *Facha*. The D.C. Circuit in *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999), for example, did not expressly adopt a definition of the term "matter" under 5 U.S.C. § 7121(d), but the court cited *Bonner* and *Facha* with approval, noting that "courts have tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action,' or the 'topics' raised." *Id*. at 550 (citations omitted). *See also Rosell v. Wood*, 357 F. Supp. 2d 123, 129–30 (D.D.C. 2004) (citing *Guerra* and *Bonner* as authority for the determination that the employee in question raised the same matter in both his CBA grievance and in his EEO complaint). Similarly, in *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 692 (E.D. Va. 2018), an employee attempted to raise a hostile-work-environment claim through the EEO process. The court determined that the employee had previously raised the bases for his claim as part of his earlier CBA grievance. *See id*. at 692. Citing *Bonner* and other cases, the court concluded that § 7121(d) prevented the employee from pursuing his claim through the EEO process, even

though the employee did not "package defendant's actions as part of a hostile work environment claim" during the CBA process. *See id*.

Other courts have applied the tests in *Bonner* and *Facha* to determine that an employee *had raised* separate matters under § 7121(d). The court in *Zuzul v. McDonald*, 98 F. Supp. 3d 852, 861–62 (M.D.N.C. 2015), for example, cited the definition in *Bonner* and the test in *Facha* to conclude that an employee's CBA grievance involving an assault-and-battery claim and her EEO complaint involving allegations of gender and racial harassment raised different matters. Likewise, in *Smith v. Jackson*, 539 F. Supp. 2d 116, 131 (D.D.C. 2008), the court concluded that an employee's CBA grievance and his EEO complaint contained the same matter to the extent that both challenged the revocation of a Compressed Work Schedule and charges of Absence Without Leave, but the court determined that the EEO complaint also contained unrelated allegations of a hostile work environment.

A similar approach to that in *Bonner* and *Facha* has been embraced by a district court within this circuit. In *Macy v. Dalton*, 853 F. Supp. 350 (E.D. Cal. 1994), a group of federal employees challenged their Reduction in Force terminations through both CBA grievances and EEO complaints. *Id.* at 352. The court in *Macy* adopted the logic in *Bonner* to conclude that the term "matter" encompasses not only the legal theory behind an employee's claim, but also the underlying adverse action. *Id*. at 353. In reaching this conclusion, the court considered the implementing regulation of the EEOC, which makes clear that a plaintiff need not have raised a discrimination claim in order to have raised the same "matter" under § 7121(d). The regulation in question provides as follows:

> An aggrieved employee who files a grievance
> with an agency whose negotiated agreement
> permits the acceptance of grievances which
> allege discrimination may not thereafter file
> a complaint on the same matter under this
> part 1614 irrespective of whether . . . the
> grievance    has    raised    an    issue    of
> discrimination.

29 C.F.R. § 1614.301(a).

Considering the standard for reviewing interpretive rules
put forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140
(1944), the court in *Macy* determined that the EEOC's
interpretation of the term "matter" in § 7121(d) was
persuasive and worthy of deference, noting that "[t]he
regulation would have to substantially contradict the statute
in order to justify judicial tinkering with this comprehensive
regulatory scheme."   853 F. Supp. at 354.   The court
concluded that "[t]he dictates of this regulation are clear: if
an employee chooses the grievance route, she may not
thereafter file an EEO complaint regardless of whether her
grievance alleged unlawful discrimination." *Id.*

In light of the wording and legislative history of 5 U.S.C.
§ 7121(d), as well as the persuasive consensus among courts
within and outside this circuit, we adopt the definition of the
term "matter" as set forth in *Bonner*.  In other words, we hold
that the term "matter" in 5 U.S.C. § 7121(d) refers to the
"underlying action" in the CBA grievance or the EEO
complaint.    "Matter,"    then,    as    other    courts    have
acknowledged, is broader than "legal theory": it refers to the
factual basis of the employee's adverse action.  This leads us
to the consideration of whether Heimrich has challenged the

same underlying government action in both his CBA grievance and in his EEO complaint.

## D. Heimrich's CBA grievance and his EEO complaint

Heimrich does not contest that, to the extent that both his CBA grievance and his EEO complaint challenge his termination, the complaint was rightfully dismissed. He instead argues that his EEO complaint contained matters in addition to his termination, and that the parts of the complaint addressing these additional matters were wrongfully dismissed.

Heimrich's brief asserts, more specifically, that his EEO complaint contained allegations of a hostile work environment based on "(1) race by familial association; (2) retaliation; and (3) disability discrimination." The key problem with this argument, however, is that his EEO complaint in fact contains no mention of a hostile-work-environment claim. It instead alleges that Heimrich *was wrongfully terminated* on the bases quoted above, stating that

> the grounds given by management for [Heimrich's] removal from the Corps of Engineers are false and that the real reasons are: 1) retaliation for raising safety concerns; 2) complaining to the OSC and the MSPB; 3) discrimination against [Heimrich] for being a recovering alcoholic and using medical leave; and 4) having an African American wife and children.

Heimrich's belated attempt to retroactively recharacterize his challenge to his termination is unavailing. We will not impute a hostile-work-environment claim where

no such allegation expressly appears in Heimrich's EEO complaint.

Heimrich further argues that his EEO complaint discussed "several harassing acts" not addressed in his CBA grievance. Although he does not point to any specific sections of his complaint in support of this contention, two particular allegations arguably fall within this category. One paragraph in the complaint alleges that an employee referred to Heimrich's African-American wife and children using a racial epithet and that another employee made a racially charged statement regarding Heimrich's son. Another sentence notes that Heimrich informed his supervisors that his drinking was exacerbated by the harassment he received in the form of "unwarranted discipline and leave restriction."

We see no indication, however, that Heimrich intended to establish a separate hostile-work-environment claim on these bases. The natural reading of Heimrich's EEO complaint is that these allegations were included to support his challenge to his termination under a new legal theory—that he was removed on the basis of his family's race and his disability. Under the definition set forth in *Bonner* and now adopted by this court, Heimrich's attempt to raise new legal arguments to challenge his termination must fail under 5 U.S.C. § 7121(d). Other courts have similarly rejected attempts to reframe CBA grievances under new theories of discrimination. *See, e.g.*, *Rosell v. Wood*, 357 F. Supp. 2d 123, 131 (D.D.C. 2004).

Heimrich's own EEO complaint supports our conclusion. He checked the box on the EEO form indicating that he had previously raised the same issues in his CBA complaint under a union-negotiated grievance procedure. His appeal to the EEOC also noted that he had previously filed a complaint on the same matter with his collective

bargaining unit. Finally, the district court observed that Heimrich, in his federal-court complaint, described his EEO complaint as challenging his termination, but made no mention of a hostile-work-environment claim. *See Heimrich*, 2018 WL 1938296, at *3 n.2.

Moreover, even if Heimrich's EEO complaint had contained a specific hostile-work-environment claim, this would not change the outcome because the basic underlying facts remain the same. Heimrich, after all, alleged in his EEO complaint that his family's race and his disability were factors that led to his termination. He therefore should have raised these facts in his CBA grievance, where an arbitrator charged with handling the grievance would necessarily have inquired into the specific acts allegedly supporting his claim of wrongful termination. *See Facha*, 914 F. Supp. at 1149. Heimrich's failure to do so should not give him two bites at the apple. This is the precise point of 5 U.S.C. § 7121(d), which allows an employee to raise the "matter" in either a CBA grievance or an EEO complaint, *but not both*.

We also note that, although Heimrich's EEO complaint is barred, there was a procedure available to Heimrich to raise his hostile-work-environment claim in the grievance process. Had he exhausted the union grievance procedure, he could have appealed to the EEOC. *See* 29 C.F.R. § 1614.401(d). He could then have amended his CBA grievance under 29 C.F.R. § 1614.106(d), which governs complaints within the EEOC's agency program. It provides that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." *Id.* Heimrich would have therefore been able to pursue a hostile-work-environment claim before the EEOC if he had so desired. But what he could not do is attempt to pursue a

hostile-work-environment claim in a separate EEO complaint.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.